# EXHIBIT A

CountySuite™ CIVIL COURT

lancastercounty    Home    Help

CASE DETAILS
PRESTIGE FUND A, LLC VS. DARYL HELLER

CI-25-00491

Close    Documents

Print ▾

Date filed:  01/27/2025 10:43 AM        Days Open: 57

Status:

Date closed:                             OPEN

## CIVIL: TORT - INTENTIONAL

### Case Participants

**Plaintiff**    1 of 25

**PRESTIGE FUND A, LLC**
C/O MATTHEW H. HAVERSTICK
KLEINBARD LLC
1717 ARCH STREET
5TH FLOOR
PHILADELPHIA, PA 19103

**Attorney (Plaintiff)**    1 of 1

**MATTHEW H. HAVERSTICK**
KLEINBARD LLC
1717 ARCH STREET
5TH FLOOR
PHILADELPHIA, PA 19103

VS

**Defendant**    1 of 2

**DARYL HELLER**
909 GREENSIDE DRIVE
LITITZ, PA 17543

No Attorney

### Case Information

Filing Date
01/27/2025

Assigned Official
LEONARD G BROWN, III (Judge)

Case Complexity

Commencement Category
Complaint

Filing Options

☐ Pro Se   ☐ Class Action Suit   ☐ Money Damages   ☐ Outside Arbitration Limits   ☐ MDJ Appeal   ☐ In Forma Pauperis

Public Notes

Reference Nos.

### Case Dispositions

| Date | Disposition Type | Disposition Category |
|------|------------------|----------------------|
|      |                  | There are no dispositions assigned to this case |

### Case Docket Entries

| Date | Category | Description | 🔒 | ⚖ | 📎 | ^ |
|------|----------|-------------|----|----|----|----|
| 03/21/2025 | PROOF OF SERVICE | PROOF OF SERVICE OF THE COMPLAINT. CERTIFICATES OF COMPLIANCE AND SERVICE, FILED BY JOSHUA J. VOSS, ESQUIRE. | | | 📎 | |

| 02/28/2025 | PRAECIPE TO REINSTATE | PRAECIPE TO REINSTATE COMPLAINT FILED BY MATTHEW H. HAVERSTICK, ESQ. - COMPLAINT REINSTATED AS DIRECTED: ANDREW E. SPADE, PROTHONOTARY | 📎 |
| 02/26/2025 | SHERIFF'S RETURN OF SERVICE | SHERIFF'S RETURN - CIVIL ACTION - COMPLAINT IN CIVIL ACTION (CICA) SHERIFF COSTS: $114.55 | 📎 |
| 01/27/2025 | CASE ASSIGNED TO JUDGE | CASE ASSIGNED TO JUDGE JEFFREY A. CONRAD | |
| 01/24/2025 | CAPTION ENTRY IS: | CAPTION ENTRY IS: PRESTIGE FUND A, LLC., PRESTIGE FUND A II, LLC., PRESTIGE FUND A IV, LLC., PRESTIGE FUND A V, LLC., PRESTIGE FUND A VI, LLC., PRESTIGE FUND A VII, LLC., PRESTIGE FUND A IX,… | |
| 01/24/2025 | COMPLAINT | COMPLAINT WITH CERTIFICATE OF COMPLIANCE FILED BY MATTHEW H. HAVERSTICK, ESQ. | 📎 |

**Case Judgments**

| Date | Debtor | Creditor | Description | Status | Date | Amount | ⌄ |
|------|--------|----------|-------------|--------|------|--------|---|

No case judgments

# EXHIBIT B

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

## IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA
### CIVIL ACTION-LAW

| | |
|---|---|
| PRESTIGE FUND A, LLC; | : No. **25-00491** |
| PRESTIGE FUND A II, LLC; | : |
| PRESTIGE FUND A IV, LLC; | : |
| PRESTIGE FUND A V, LLC; | : |
| PRESTIGE FUND A VI, LLC; | : |
| PRESTIGE FUND A VII, LLC; | : |
| PRESTIGE FUND A IX, LLC; | : |
| PRESTIGE FUND B, LLC; | : |
| PRESTIGE FUND B II, LLC; | : |
| PRESTIGE FUND B IV, LLC; | : |
| PRESTIGE FUND B V, LLC; | : |
| PRESTIGE FUND B VI, LLC; | : |
| PRESTIGE FUND B VII, LLC; | : |
| PRESTIGE FUND B BTM I, LLC; | : |
| PRESTIGE FUND D, LLC; | : |
| PRESTIGE FUND D III, LLC; | : |
| PRESTIGE FUND D IV, LLC; | : |
| PRESTIGE FUND D V, LLC; | : |
| PRESTIGE FUND D VI, LLC; | : |
| PRESTIGE FUND D BTM I, LLC; | : |
| WF VELOCITY I, LLC; | : |
| WF VELOCITY FUND IV, LLC; | : |
| WF VELOCITY FUND V, LLC; | : |
| WF VELOCITY FUND VI, LLC; and | : |
| WF VELOCITY FUND VII, LLC, | : |
| Plaintiffs, | : |
| v. | : |
| | : |
| DARYL HELLER and HELLER CAPITAL | : |
| GROUP, LLC | : |
| Defendants. | : |

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other

1/27/25 $180.50 ORDER# 025001635 RECEIPT# 190066 CL

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lancaster Bar Association
Lawyer Referral Service
28 East Orange Street
Lancaster, PA 17602
Telephone: 717-393-0737

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
*Attorneys for Plaintiffs*

### IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA
### CIVIL ACTION-LAW

| | |
|---|---|
| PRESTIGE FUND A, LLC; | 25 - 00491 |
| PRESTIGE FUND A II, LLC; | No. _____ |
| PRESTIGE FUND A IV, LLC; | |
| PRESTIGE FUND A V, LLC; | |
| PRESTIGE FUND A VI, LLC; | |
| PRESTIGE FUND A VII, LLC; | |
| PRESTIGE FUND A IX, LLC; | |
| PRESTIGE FUND B, LLC; | |
| PRESTIGE FUND B II, LLC; | |
| PRESTIGE FUND B IV, LLC; | |
| PRESTIGE FUND B V, LLC; | |
| PRESTIGE FUND B VI, LLC; | |
| PRESTIGE FUND B VII, LLC; | |
| PRESTIGE FUND B BTM I, LLC; | |
| PRESTIGE FUND D, LLC; | |
| PRESTIGE FUND D III, LLC; | |
| PRESTIGE FUND D IV, LLC; | |
| PRESTIGE FUND D V, LLC; | |
| PRESTIGE FUND D VI, LLC; | |
| PRESTIGE FUND D BTM I, LLC; | |
| WF VELOCITY I, LLC; | |
| WF VELOCITY FUND IV, LLC; | |
| WF VELOCITY FUND V, LLC; | |
| WF VELOCITY FUND VI, LLC; and | |
| WF VELOCITY FUND VII, LLC, | |
|             Plaintiffs, | |
| v. | |
| | |
| DARYL HELLER and HELLER CAPITAL | |
| GROUP, LLC | |
|           Defendants. | |

Lancaster Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

## COMPLAINT

Plaintiffs Prestige Fund A, LLC; Prestige Fund A II, LLC; Prestige Fund A

IV, LLC; Prestige Fund A V, LLC; Prestige Fund A VI, LLC; Prestige Fund A VII,

LLC; Prestige Fund A IX, LLC; Prestige Fund B, LLC; Prestige Fund B II, LLC;

Prestige Fund B IV, LLC; Prestige Fund B V, LLC; Prestige Fund B VI, LLC;

Prestige Fund B VII, LLC; Prestige Fund B BTM I, LLC; Prestige Fund D, LLC;

Prestige Fund D III, LLC; Prestige Fund D IV, LLC; Prestige Fund D V, LLC;

Prestige Fund D VI, LLC; Prestige Fund D BTM I, LLC; WF Velocity I, LLC;

WF Velocity Fund IV, LLC; WF Velocity Fund V, LLC; WF Velocity Fund VI, LLC;

and WF Velocity Fund VII, LLC (collectively, **the Funds**) for their Complaint

against Defendants Daryl Heller and Heller Capital Group, LLC allege as follows:

### PRELIMINARY STATEMENT

1.      Daryl Heller, the CEO of Heller Capital, instituted a widescale

fraudulent scheme for the sale and operation of ATM units owned by the Funds.

2.      The Funds are separate LLCs composed of approximately 2700

investors who invested hundreds of millions in Heller's scheme for the purchase and

operation of well-over 30,000 ATMs.

3.      Heller made countless fraudulent representations to the Funds and

their investors regarding the ATMs he purchased, the operation of those ATMs, the

viability of the Funds' investments, and the profits being earned.

4.      Because of and in reliance on Heller's fraudulent representations about

the business scheme, the Funds entered into ATM Management Services

Agreements (MSAs) with Paramount Management Group, LLC from 2020 through

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

2023, under which Paramount initially received all revenues generated from the ATMs to cover operational costs and then certain monthly revenues were remitted to the Funds.

5.      Paramount ceased making its required monthly payments to the Funds in April 2024, so the Funds brought suit against Paramount for breach of the MSAs a few months later. *See Prestige Fund A, LLC, et al. v. Paramount Management Group*, LLC, No. CI-24-06012 (C.P. Lancaster) (Paramount Action).

6.      The Paramount Action ultimately resulted in a November 21, 2024 Consent Judgment against Paramount for $138,156,118.38, which also required Paramount to provide an inventory and rights and title to the ATMs the Funds owned.

7.      When Paramount did not comply with that Consent Judgment, contempt proceedings finally revealed Heller's fraud.

8.      As the Funds learned through the Paramount Action, the ATMs Heller claimed to have purchased for the Funds either (1) never existed, (2) were purchased but stayed in a warehouse, (3) were sold to more than one entity, and/or (4) were not purchased outright.

9.      Despite leaving the Funds with worthless investments and far less ATM assets than promised, Heller was not done defrauding the Funds. In the weeks after the Consent Judgment, Heller transferred money from Paramount to Heller Capital with the intent to defraud the Funds of the money they are owed under the Consent Judgment.

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

10.     The Funds now seek redress for Heller's years of fraudulent scheming and stolen investments and Heller's most recent attempts to defraud the Funds by transferring money to which they are entitled.

## PARTIES

11.     Plaintiff Prestige Fund A, LLC is a limited liability company organized under the laws of Pennsylvania.

12.     Plaintiff Prestige Fund A II, LLC is a limited liability company organized under the laws of Pennsylvania.

13.     Plaintiff Prestige Fund A IV, LLC is a limited liability company organized under the laws of Delaware.

14.     Plaintiff Prestige Fund A V, LLC is a limited liability company organized under the laws of Delaware.

15.     Plaintiff Prestige Fund A VI, LLC is a limited liability company organized under the laws of Delaware.

16.     Plaintiff Prestige Fund A VII, LLC is a limited liability company organized under the laws of Delaware.

17.     Plaintiff Prestige Fund A IX, LLC is a limited liability company organized under the laws of Delaware.

18.     Plaintiff Prestige Fund B, LLC is a limited liability company organized under the laws of Delaware.

19.     Plaintiff Prestige Fund B II, LLC is a limited liability company organized under the laws of Delaware.

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

20.     Plaintiff Prestige Fund B IV, LLC is a limited liability company organized under the laws of Delaware.

21.     Plaintiff Prestige Fund B V, LLC is a limited liability company organized under the laws of Delaware.

22.     Plaintiff Prestige Fund B VI, LLC is a limited liability company organized under the laws of Delaware.

23.     Plaintiff Prestige Fund B VII, LLC is a limited liability company organized under the laws of Delaware.

24.     Plaintiff Prestige Fund B BTM I, LLC is a limited liability company organized under the laws of Delaware.

25.     Plaintiff Prestige Fund D, LLC is a limited liability company organized under the laws of Delaware.

26.     Plaintiff Prestige Fund D III, LLC is a limited liability company organized under the laws of Delaware.

27.     Plaintiff Prestige Fund D IV, LLC is a limited liability company organized under the laws of Delaware.

28.     Plaintiff Prestige Fund D V, LLC is a limited liability company organized under the laws of Delaware.

29.     Plaintiff Prestige Fund D VI, LLC is a limited liability company organized under the laws of Delaware.

30.     Plaintiff Prestige Fund D BTM I, LLC is a limited liability company organized under the laws of Delaware.

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

31.     Plaintiff WF Velocity I, LLC is a limited liability company organized under the laws of Delaware.

32.     Plaintiff WF Velocity Fund IV, LLC is a limited liability company organized under the laws of Delaware.

33.     Plaintiff WF Velocity Fund V, LLC is a limited liability company organized under the laws of Delaware.

34.     Plaintiff WF Velocity Fund VI, LLC is a limited liability company organized under the laws of Delaware.

35.     Plaintiff WF Velocity Fund VII, LLC is a limited liability company organized under the laws of Delaware.

36.     Defendant Daryl Heller is an adult individual and businessman who resides and conducts business in Lancaster County.

37.     Defendant Heller Capital Group, LLC is a limited liability company, with an office located at 415 North Prince Street, Suite 202, Lancaster, PA 17603.

38.     Heller is the CEO of Heller Capital.

39.     Upon information and belief, Heller Capital is the sole member of Paramount.

## JURISDICTION AND VENUE

40.     This Court has original jurisdiction to hear this action under 42 Pa.C.S. § 931.

41.     Under Pa.R.Civ.P. 2179, venue is proper in this Court because (1) Heller Capital's office is in Lancaster County; (2) Heller Capital regularly conducts business in Lancaster County; (3) the causes of action arose in Lancaster

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

County; and (4) a transaction or occurrence took place in Lancaster County out of

which the causes of action arose.

## FACTS

### A.    Heller's business pitch

42.    Heller began his business in the ATM marketplace over a decade ago.

43.    Later, around 2020, Heller began pitching ATM investments to the

Funds' investors.

44.    As set forth in his promotional materials for the investment, Heller

represented himself as an "entrepreneur, founding more than twelve companies

within the telecom, technology, agriculture, real estate and energy sectors."

45.    He further held himself out as having been in the "ATM space" since

February 2011 and having a background and strategy to generate revenue through

"monetization of ATMs with advertising revenue streams into the future."

46.    Heller described the "ATM model" as such:

> Our Core strategy is to participate in a mature and stable ATM space
> that has historical strong operating margins. This is done by accessing
> attractive real estate locations for ATMs that are strategically
> positioned for capitalizing next generation revenue opportunity,
> augmenting current and healthy surcharge operating margins through
> an enhanced monetization strategy.

47.    Heller further represented that, under this model, each Fund would

own a portfolio of ATM assets and the management company, Paramount, would

"source lucrative contracts with location owners" to place the ATMs and operate and

service the ATMs.

Lackawanna County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

48.     In turn, the portfolio of ATMs placed by Paramount would be aggregated to "normalize the return for investors," and keep "monthly payment consistent."

49.     As Heller further represented to the Funds' investors, the ATMs would be placed at "small chain convenience stores and retail stores, bodega and sundry shops (deli/grocery stores in metro markets), malls and travel plazas."

50.     In other words, Heller represented the business plan as follows: the Funds would own ATMs purchased with their investment money, the management company (Paramount) would place those ATMs and service them, the ATMs would generate revenue when used, and the Funds would receive a monthly return on the investment from the portfolio of ATMs.

51.     Heller represented the investment would generate monthly returns over the life of the investment.

52.     Heller made further representations about the viability of the investment in Q&A sections of the investment summary promotional materials.

53.     Heller represented that his management company, Paramount, committed to each investor the projected return each month based on a blended performance of the entire fund and, "in the rare occasion that the fund performance is lagging, management will share their portion of the revenue to bring up to the proforma amount."

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

54.     In response to the question "Have you been hitting your projections," Heller stated in promotional materials "[w]e have paid distributions in full and on time in all funds since we got involved in the business back in 2012."

55.     In reliance on Heller's representations about the ATM investments, the Funds entered into MSAs with Paramount.

**B.    The MSAs and breach of the MSAs**

56.     Each of the Funds entered into an MSA with Paramount between 2020 and 2023.

57.     Under each of the MSAs, the Funds purchased ATMs.

58.     The investors in the Funds, which total over 2700, invested hundreds of millions to purchase ATMs from Paramount under the MSAs.

59.     Bills of sale covering years 2017-2023 provided by Heller, through Paramount, to the Funds showed the purchase of approximately 36,000 ATMs on the Funds' behalf; yet, many of the bills of sale contained so-called placeholder numbers, which could not be tied to any particular ATM (i.e., the placeholder number was not the actual serial number of any ATM).

60.     Moreover, upon information and belief, the bills of sale provided by Heller for purchases in 2023 did not reflect sufficient ATMs purchased based on the amount invested by the Funds; hence, the bills of sale underreported the ATMs that should have been purchased with the Funds' investments.

61.     Furthermore, Heller never supplied bills of sale for ATMs purchased in 2024, which should have shown an additional approximately 700 ATMs.

Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

62.    In total, from 2017-2024, Heller, through Paramount, should have purchased in excess of 38,000 ATMs.

63.    Heller never purchased sufficient ATMs to cover the investments made by the Funds; his failure to do so was willful and done with intent to defraud the Funds.

64.    Following purchase of the ATMs, the ATMs belonged to the respective Funds or their members.

65.    Under the MSAs, Heller, through Paramount, agreed to provide management services for the Funds' ATMs including, among other things, placing the ATMs at retail locations, entering into location contracts, and operating and maintaining the ATMs for the benefit of the Funds.

66.    Paramount and the individual Funds agreed that Paramount would remit monthly a sum to the Funds—called the Monthly Revenue Remittance—and Paramount would keep, as a fee, certain revenues generated from the operation of the ATMs.

67.    While Paramount was timely issuing payment to the Funds under the MSAs, Heller provided updates on the Funds' investment.

68.    During a presentation in March 2023, for example, Heller again represented the viability of the ATMs in the Funds' portfolios and projected investments.

Lackawanna County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

69.    Further, in February 2024, Heller represented that 34,000 ATMs belonging to the Funds were active and online, generating gross revenue in excess of $43 million.

70.    That representation, at the time it was made by Heller, was not true and he knew it not to be true.

71.    In Apil 2024, Heller, through Paramount, stopped issuing the Monthly Revenue Remittance to the Funds and never again resumed those payments.

72.    Upon information and belief, Heller at some point started using new investments to pay prior monthly obligations.

## C.    Paramount Action and consent judgment

73.    After repeated unanswered demands on Heller and Paramount for the unpaid Monthly Revenue Remittance under the MSAs, the Funds filed the Paramount Action for breach of contract and injunctive relief.

74.    The Funds immediately sought a preliminary injunction, which was denied based on Heller's testimony about the viability of the Funds' investments.

75.    The Funds and Paramount began negotiations to settle the dispute.

76.    The parties negotiated a potential resolution of the Paramount Action in November 2024, under which Heller valued the Funds' ATM network at no less than $450,000,000.

77.    On November 21, 2024, the Court entered a Consent Judgment in the Funds' favor in the amount of $138,156.118.38.

78.    The Consent Judgment further ordered that, within 2 days, Paramount shall (1) supply to the Funds a complete inventory of all ATM Units

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

purchased by the Funds, and (2) assign and transfer to the Funds the right, title, and interest to the Funds' ATM Units and the location agreements, permits, and other agreements for the ATM units.

79.     Heller and Paramount did not timely comply with the Consent Order.

**D.     Contempt in the Paramount Action and discovering the fraud**

80.     When Paramount did not comply with its obligations to provide the required information for the Funds to take title to the ATMs in the network, the Funds sought contempt, at which time they discovered Heller's fraud.

81.     For example, through contempt proceedings, the Funds learned that they never owned 38,000 ATMs, or even 36,000 ATMs, and that Paramount never managed anywhere close to either quantity of ATMs at any time.

82.     Paramount's then-Vice President of Information Systems testified on December 6, 2024 in a Paramount Action contempt hearing that Paramount only managed between 9,000 and 10,000 ATMs total at that time, not all of which belonged to the Funds.

83.     The contempt proceedings further revealed that after the Funds filed suit against Paramount, Heller, without consent or notice, sold off massive portions of the Funds' ATM network.

84.     It was also revealed that even prior to December 2024, the greatest number of ATMs that Paramount ever managed was only approximately 20,000 ATMs in total, not all of which belonged to the Funds.

85.     Of the 20,000 ATMs that Paramount managed at the height of its management, only 8,000 of the ATMs were so-called Paramount-owned, meaning

Lackawanna County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

the greatest number of ATMs the Funds ever owned was a mere 8000 ATMs, despite Heller accepting sums sufficient to purchase in excess of 38,000 ATMs and despite Heller representing that no less than 34,000 ATMs were online and active as late as February 2024.

86.    The balance of the ATMs under management by Paramount showed yet more intentional misrepresentations by Heller to the Funds. Of the 20,000 ATMs under management at the height of Paramount's management, some 12,000 ATMs were so-called affiliated ATMs, meaning Heller had not purchased the ATMs outright, as he said he would under the MSAs, but instead he purchased some rights in some ATMs, but not the actual right to own the device and fully control its use and profits.

87.    Essentially, Heller, upon information and belief, purchased partial rights in thousands of ATMs solely so he could pad the number of ATMs under management by Paramount, doing so to further his fraudulent scheme to induce Fund investments.

88.    Because the Funds did not own all of the ATMs Paramount managed, Heller's representation that the Funds owned over 30,000 ATMs was never true.

89.    Moreover, as Paramount eventually turned over information for rights and title to the Funds' ATMs, the Funds learned that Heller orchestrated the purchase of ATMs that he never even intended to place in locations for operation.

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

90.   For example, in 2020 through 2023, Heller entered into sales agreements with TriData U.S., Inc. for the purchase of used ATM units for the Funds.

91.   Upon present information and belief, Heller purchased in excess of 5000 ATMs from Tri-Data using Fund money.

92.   For some of purchase agreements with TriData, Heller explicitly negotiated for over a year of storage for the ATM units.

93.   Nearly 3000 of the TriData-purchased ATMs never left the warehouse.

94.   Heller purchased them knowing he would never place them into service and he purchased them solely so he could, and later did, represent to the Funds that he was complying with his obligations under the investment scheme.

95.   In sum, Heller purchased in excess of 5,000 ATMs from TriData and no less than approximately 3000 of those ATMs remain in warehouses, all at Heller's request, and all to further his fraudulent scheme.

96.   Instead of ensuring that the ATMs were deployed to a location to begin operation, as Heller represented to the Funds he would, Heller let those TriData-purchased ATMs sit valueless in storage.

97.   Upon information and belief, Heller also did not purchase all of the ATMs he represented he would.

98.   Upon information and belief, Heller also purchased ATM units in which more than one investor group has title or interest.

Lackawanna County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

99.    For example, Heller represented to ATM investors (ones not participants in the Funds) in Michigan that he purchased 250 ATMs under an MSA, but more than half of those ATM serial numbers overlapped with serial numbers of ATMs Heller allegedly purchased for the Funds, and some of those overlaps span across multiple Funds.

100.    Further, Heller issued multiple bills of sale to individual Funds that reflected serial numbers already on bills of sale to other Funds, meaning he was double-selling ATM units over and over.

101.    Lastly, the Funds discovered that Heller left the Funds' remaining network in shambles.

102.    It was saddled with unpaid debts, totaling, upon information and belief, around $7 million.

103.    Also, the Funds learned that some of the ATMs had been pledged as collateral by Heller for loans that he subsequently defaulted on.

104.    Heller had not paid many vendors and locations for many months, resulting in thousands of ATMs being offline, replaced, and unavailable for the Funds to operate.

105.    Large portions of the network were subject to disputed ownership claims because Heller had not paid the persons or entities from whom various portfolios were purchased by Heller.

106.    In sum, Heller intentionally caused the Funds' remaining assets to be, effectively, valueless.

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

## E.    Heller conveyances to Heller Capital

107.    Notably, after the Funds secured their Consent Judgment against Paramount on November 21, 2024, Heller authorized various transfers of funds from Paramount's accounts to Heller Capital.

108.    In the month after the Consent Judgment was entered, Paramount received $1,320,252.82, but disbursed over $2,000,000, including significant payments to Heller Capital.

109.    Indeed, Paramount acknowledged that it transferred $344,867.62 to Heller Capital in the month after the Consent Judgment.

110.    As Paramount represented in the Paramount Action, it laid off its staff on December 13, 2024, leaving it without any employees.

111.    Therefore, any of Paramount's financial transactions after that date could only be authorized by Heller, the CEO of Heller Capital, which is the sole member of Paramount.

112.    Heller made these transfers after the Funds' Consent Judgment against Paramount. *See* 12 Pa.C.S. § 5104(a).

113.    Upon information and belief, Heller made these transfers with the intent to hinder, delay, or defraud the Funds because (1) Heller retained possession or control of those funds after the transfer; (2) before the transfer, Heller had been sued or threatened with suit by the Funds, (3) the transfers constituted a substantial amount of Heller's assets; (4) the transfers occurred shortly after a substantial debt was incurred through the Consent Judgment. *See* 12 Pa.C.S. § 5104(b).

16

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

114.    Upon information and belief, Heller made additional voidable transfers to Heller Capital.

## COUNT I—FRAUD IN THE INDUCEMENT
### Funds v. Daryl Heller

115.    The foregoing paragraphs are incorporated by reference as if set forth in full herein.

116.    Fraud in the inducement exists where there is (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury was proximately caused by the reliance. *Seguro Medico, LLC v. Humphreys*, 313 A.3d 298, 312 (Pa. Cmwlth. 2024).

117.    Heller made representations that he would and did purchase ATMs that the Funds owned outright.

118.    Heller further represented that the purchased ATMs would be deployed by Paramount to retail locations and begin to generate fees that would ultimately result in a Monthly Revenue Remittance to the Funds and a profit on the investment.

119.    Heller also represented that the Funds owned in excess of 30,000 ATMs.

120.    These representations were material to the Funds, who invested and maintained their investment based on Heller's representations.

Lackawanna County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

121.   But these representations were false because Heller either (1) did not purchase all of the ATMs he represented he would, (2) purchased ATMs that were never deployed to locations, (3) purchased ATM units in which more than one entity has title or interest, and/or (4) were not purchased outright.

122.   Moreover, at the time that Heller made the representations, he knew they were false.

123.   The Funds reasonably relied on those representations from Heller who, as the CEO of Heller Capital, which is the sole member of Paramount, claimed industry knowledge and successful experience in the ATM market.

124.   As a direct and proximate result of Heller's representations, the Funds suffered substantial damages.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in Plaintiffs' favor against Defendant Daryl Heller in an amount in excess of $50,000, plus interest, costs and expenses, and any other relief as the Court deems just and proper.

## COUNT II – FRAUDULENT MISREPRESENTATION
### Funds v. Daryl Heller

125.   The foregoing paragraphs are incorporated by reference as if set forth in full herein.

126.   Similar to fraud in the inducement, fraudulent misrepresentation exists where there is (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of the falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it;

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

(5) justifiable reliance on the misrepresentation; and (6) resulting injury proximately caused by the reliance. *Weston v. Northampton Personal Care, Inc.*, 62 A.3d 947, 960 (Pa. Super. 2013).

127.   Heller made representations that he would and did purchase ATMs that the Funds owned outright.

128.   Heller further represented that the purchased ATMs would be deployed by Paramount to retail locations and begin to generate fees that would ultimately result in a Monthly Revenue Remittance to the Funds and a profit on the investment.

129.   Heller also represented that the Funds owned in excess of 30,000 ATMs.

130.   These representations were material to the Funds, who invested and maintained that investment based on Heller's representation.

131.   But these representations were false because Heller either (1) did not purchase all of the ATMs he represented he would, (2) purchased ATMs that were never deployed to locations, (3) purchased ATM units in which more than one entity has title or interest, and/or (4) were not purchased outright.

132.   Moreover, at the time that Heller made the representations, he knew they were false.

133.   The Funds reasonably relied on those representations from Heller who, as the CEO of Heller Capital, which is the sole member of Paramount, claimed industry knowledge and successful experience in the ATM market.

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

134.    As a direct and proximate result of Heller's representations, the Funds suffered substantial damages.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in Plaintiffs' favor against Defendant Daryl Heller in an amount in excess of $50,000, plus interest, costs and expenses, and any other relief as the Court deems just and proper.

## COUNT III—VOIDABLE TRANSACTIONS
### Funds v. Daryl Heller and Heller Capital

135.    The foregoing paragraphs are incorporated by reference as if set forth in full herein.

136.    The Funds have a Consent Judgment in their favor against Paramount in the Paramount Action, entered on November 21, 2024.

137.    As such, the Funds are a creditor under the Pennsylvania Uniform Voidable Transactions Act. 12 Pa.C.S. § 5101.

138.    At the time the Consent Judgment was entered, Heller was the CEO of Heller Capital, which is the sole member of Paramount.

139.    Accordingly, Heller is a debtor under the Pennsylvania Uniform Voidable Transactions Act. 12 Pa.C.S. § 5101.

140.    Also, at the time the Consent Judgment was entered, Heller was the CEO of Heller Capital.

141.    Since the date of the Consent Judgment, Heller transferred at least $344,867.62 from Paramount to Heller Capital.

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

142.    Heller made these transfers with the intent to hinder, delay, or defraud the Funds because (1) Heller retained possession or control of those funds after the transfer; (2) before the transfer, Heller had been sued or threatened with suit by the Funds, (3) the transfers constituted a substantial amount of Heller's assets; (4) the transfers occurred shortly after a substantial debt was incurred through the Consent Judgment. *See* 12 Pa.C.S. § 5104(b).

143.    Upon information and belief, Heller made additional fraudulent transfers to Heller Capital.

144.    Heller's transfers of Paramount's funds to Heller Capital are fraudulent conveyances under the Pennsylvania Uniform Voidable Transactions Act. *See* 12 Pa.C.S. §§ 5104, 5105.

WHEREFORE, Plaintiffs respectfully request that this Court (1) void the transfers to satisfy the Funds' claims, 12 Pa.C.S. § 5104(a)(1); (2) issue an injunction against further disposition by Heller and Heller Capital of the transferred assets, 12 Pa.C.S. § 5104(a)(1); and (3) issue such other relief as the Court deems just and proper.

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

Respectfully submitted,

Dated: January 24, 2025

_____

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
szimmer@kleinbard.com

*Attorneys for Plaintiffs*

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

## VERIFICATION

I, Jerry D. Hostetter, hereby state that I am President of Prestige Investment Group, LLC, the sole member of Prestige Funds Management, LLC, President of Prestige Funds Management II, LLC, President of Prestige Funds Management III, LLC, and President of Prestige Investment Group, LLC, the Class A Designee Manager of WF Velocity Funds Management, LLC, that I am authorized to make this verification on behalf of Plaintiffs, and that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Dated: Jan 23, 2025

Case ID: 250101470
Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

## CERTIFICATION OF COMPLIANCE WITH
## <u>CASE RECORDS PUBLIC ACCESS POLICY</u>

I certify that this filing complies with the provisions of the *Case Records*

*Public Access Policy of the Unified Judicial System of Pennsylvania* that require

filing confidential information and documents differently than nonconfidential

information and documents.

Dated: January 24, 2025

_____

Matthew H. Haverstick (No. 85072)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: mhaverstick@kleinbard.com

*Attorneys for Plaintiffs*

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA

**PROTHONOTARY**

**CIVIL COVER SHEET**

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

PLEASE LIST NAMES AND ADDRESSES OF ADDITIONAL PARTIES ON A SEPARATE SHEET.

ALL PARTY INFORMATION IS REQUIRED INCLUDING ZIP CODES.  ALL PARTY INFORMATION MUST MATCH THE PLEADING.  PLEASE DO NOT STAPLE THE COVER SHEET TO THE PLEADING.  IF AN EVENT NEEDS TO BE SCHEDULED, A CAO SCHEDULING COVER SHEET MUST ALSO BE ATTACHED.

TYPE OF ACTION: Civil Action

For Prothonotary Use Only:

DOCKET No: CI **25 - 00 49** 4

## PARTY INFORMATION

PLAINTIFF'S NAME: Prestige Fund A, LLC

ADDRESS:  c/o Matthew H. Haverstick
*If confidential,*  KLEINBARD LLC
*use 2nd sheet*  1717 Arch Street, 5th Floor
Philadelphia, PA 19103

DEFENDANT'S NAME: Daryl Heller

ADDRESS:  909 Greenside Drive
Lititz, PA 17543

MUNICIPALITY:

TWP/BOROUGH:

DOB: _____  TELEPHONE #: _____
*(mm/dd/yyyy)*          *(##########)*

MUNICIPALITY:

TWP/BOROUGH:

DOB: _____  TELEPHONE #: _____
*(mm/dd/yyyy)*          *(##########)*

## FILING ATTORNEY / FILING PARTY INFORMATION

FIRM/OFFICE:  Kleinbard LLC

FILING ATTORNEY/PARTY:  Matthew H. Haverstick          AOPC: *(Attorney ID)* #: 85072

ADDRESS:  1717 Arch Street, 5th Floor     CITY: Philadelphia     STATE: PA    ZIP CODE: 19103

TELEPHONE #: (215) 568-2000     EMAIL:  mhaverstick@kleinbard.com
*(##########)*

## TAX LIEN INFORMATION

MUNICIPALITY: _____          MAP REFERENCE: _____

DEED BOOK: _____     DEED PAGE: _____     DEED DATE: _____

SALE PRICE: _____     TAX YEAR: _____     TAX LIEN AMOUNT: _____

PROPERTY DESCRIPTION:

## PFA/SVPO/PFI INFORMATION

HEARING DATE: _____          SOCIAL SECURITY #: (Defendant – Last 4 digits) _____

POLICE DEPARTMENT: _____

PREVIOUS PETITIONS:  YES ☐    NO ☐    If 'YES', File Date: _____

## Supreme Court of Pennsylvania

### Court of Common Pleas
### Civil Cover Sheet

_____ Lancaster _____ County

Lancaster County Prothonotary E-Filed - 24 Jan 2025 11:25:30 AM
Case Number: CI-25-00491

For Prothonotary Use Only:

Docket No:

**25 - 00 491**

TIME STAMP

The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

**SECTION A**

**Commencement of Action**
- [x] Complaint
- [ ] Transfer from Another Jurisdiction
- [ ] Writ of Summons
- [ ] Petition
- [ ] Declaration of Taking

Lead Plaintiff's Name:
Prestige Fund A, LLC

Lead Defendant's Name:
Daryl Heller

Are money damages requested? [x] Yes  [ ] No

Dollar Amount Requested: [ ] [ ] within arbitration limits (check one)  [ ] [x] outside arbitration limits

Is this a Class Action Suit?  [ ] Yes  [x] No

Is this an MDJ Appeal?  [ ] Yes  [x] No

Name of Plaintiff/Appellant's Attorney: Matthew H. Haverstick

[ ] Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**SECTION B**

**Nature of the Case** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE**. If you are making more than one type of claim, check the one that you consider most important.

**TORT** (do not include Mass Tort)
- [x] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability (does not include mass tort)
- [ ] Slander/Libel/ Defamation
- [ ] Other: _____

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other: _____

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional: _____

**CONTRACT** (do not include Judgments)
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other
- _____
- _____
- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other
- _____
- [ ] Other: _____
- _____

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other: _____
- _____

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other
- _____
- _____
- [ ] Zoning Board
- [ ] Other: _____
- _____

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [x] Other:
  PA Uniform Voidable
  Transactions Act

# EXHIBIT C

Lancaster County Prothonotary E-Filed - 28 Feb 2025 10:49:50 AM
Case Number: CI-25-00491

## IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA
## CIVIL ACTION-LAW

| | | |
|---|---|---|
| PRESTIGE FUND A, LLC; | : | No. CI-25-00491 |
| PRESTIGE FUND A II, LLC; | : | |
| PRESTIGE FUND A IV, LLC; | : | |
| PRESTIGE FUND A V, LLC; | : | |
| PRESTIGE FUND A VI, LLC; | : | |
| PRESTIGE FUND A VII, LLC; | : | |
| PRESTIGE FUND A IX, LLC; | : | |
| PRESTIGE FUND B, LLC; | : | |
| PRESTIGE FUND B II, LLC; | : | |
| PRESTIGE FUND B IV, LLC; | : | |
| PRESTIGE FUND B V, LLC; | : | |
| PRESTIGE FUND B VI, LLC; | : | |
| PRESTIGE FUND B VII, LLC; | : | |
| PRESTIGE FUND B BTM I, LLC; | : | |
| PRESTIGE FUND D, LLC; | : | |
| PRESTIGE FUND D III, LLC; | : | |
| PRESTIGE FUND D IV, LLC; | : | |
| PRESTIGE FUND D V, LLC; | : | |
| PRESTIGE FUND D VI, LLC; | : | |
| PRESTIGE FUND D BTM I, LLC; | : | |
| WF VELOCITY I, LLC; | : | |
| WF VELOCITY FUND IV, LLC; | : | |
| WF VELOCITY FUND V, LLC; | : | |
| WF VELOCITY FUND VI, LLC; and | : | |
| WF VELOCITY FUND VII, LLC, | : | |
| Plaintiffs, | : | DATE: 2/28/2025 |
| v. | : | COMPLAINT RE-INSTATED |
| | : | ANDREW E. SPADE |
| DARYL HELLER and HELLER CAPITAL | : | PROTHONOTARY |
| GROUP, LLC | | |
| Defendants. | : | |

## PRAECIPE TO REINSTATE COMPLAINT

TO THE PROTHONOTARY:

Kindly reinstate the Complaint filed in the above-captioned matter, which is attached hereto as Exhibit A.

2/28/2025  $ 9.50  RMD  025004202  receipt 191496

Lancaster County Prothonotary E-Filed - 28 Feb 2025 10:49:50 AM
Case Number: CI-25-00491

Respectfully submitted,

Dated: February 28, 2025

_____

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
szimmer@kleinbard.com

*Attorneys for Plaintiffs*

Lancaster County Prothonotary E-Filed - 28 Feb 2025 10:49:50 AM
Case Number: CI-25-00491

# EXHIBIT A

Lancaster County Prothonotary E-Filed - 24 Feb 2025 10:25:50 AM
Case Number: CI-25-00491

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA**
**CIVIL ACTION-LAW**

| | |
|---|---|
| PRESTIGE FUND A, LLC; | : |
| PRESTIGE FUND A II, LLC; | : No. _____ |
| PRESTIGE FUND A IV, LLC; | : |
| PRESTIGE FUND A V, LLC; | : |
| PRESTIGE FUND A VI, LLC; | : |
| PRESTIGE FUND A VII, LLC; | : |
| PRESTIGE FUND A IX, LLC; | : |
| PRESTIGE FUND B, LLC; | : |
| PRESTIGE FUND B II, LLC; | : |
| PRESTIGE FUND B IV, LLC; | : |
| PRESTIGE FUND B V, LLC; | : |
| PRESTIGE FUND B VI, LLC; | : |
| PRESTIGE FUND B VII, LLC; | : |
| PRESTIGE FUND B BTM I, LLC; | : |
| PRESTIGE FUND D, LLC; | : |
| PRESTIGE FUND D III, LLC; | : |
| PRESTIGE FUND D IV, LLC; | : |
| PRESTIGE FUND D V, LLC; | : |
| PRESTIGE FUND D VI, LLC; | : |
| PRESTIGE FUND D BTM I, LLC; | : |
| WF VELOCITY I, LLC; | : |
| WF VELOCITY FUND IV, LLC; | : |
| WF VELOCITY FUND V, LLC; | : |
| WF VELOCITY FUND VI, LLC; and | : |
| WF VELOCITY FUND VII, LLC, | : |
|               Plaintiffs, | : |
| v. | : |
| | : |
| DARYL HELLER and HELLER CAPITAL | : |
| GROUP, LLC | |
|               Defendants. | : |

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other

Lancaster County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

claim or relief requested by the plaintiff. You may lose money or property or other
rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO
NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH
BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT
HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE
TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY
OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR
NO FEE.

Lancaster Bar Association
Lawyer Referral Service
28 East Orange Street
Lancaster, PA 17602
Telephone: 717-393-0737

Lancaster County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
*Attorneys for Plaintiffs*

## IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA
## CIVIL ACTION-LAW

| | |
|---|---|
| PRESTIGE FUND A, LLC; | : |
| PRESTIGE FUND A II, LLC; | :    No. _____ |
| PRESTIGE FUND A IV, LLC; | : |
| PRESTIGE FUND A V, LLC; | : |
| PRESTIGE FUND A VI, LLC; | : |
| PRESTIGE FUND A VII, LLC; | : |
| PRESTIGE FUND A IX, LLC; | : |
| PRESTIGE FUND B, LLC; | : |
| PRESTIGE FUND B II, LLC; | : |
| PRESTIGE FUND B IV, LLC; | : |
| PRESTIGE FUND B V, LLC; | : |
| PRESTIGE FUND B VI, LLC; | : |
| PRESTIGE FUND B VII, LLC; | : |
| PRESTIGE FUND B BTM I, LLC; | : |
| PRESTIGE FUND D, LLC; | : |
| PRESTIGE FUND D III, LLC; | : |
| PRESTIGE FUND D IV, LLC; | : |
| PRESTIGE FUND D V, LLC; | : |
| PRESTIGE FUND D VI, LLC; | : |
| PRESTIGE FUND D BTM I, LLC; | : |
| WF VELOCITY I, LLC; | : |
| WF VELOCITY FUND IV, LLC; | : |
| WF VELOCITY FUND V, LLC; | : |
| WF VELOCITY FUND VI, LLC; and | : |
| WF VELOCITY FUND VII, LLC, | : |
| Plaintiffs, | : |
| v. | : |
| | : |
| | : |
| DARYL HELLER and HELLER CAPITAL | : |
| GROUP, LLC | : |
| Defendants. | : |

Lancaster County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

## COMPLAINT

Plaintiffs Prestige Fund A, LLC; Prestige Fund A II, LLC; Prestige Fund A
IV, LLC; Prestige Fund A V, LLC; Prestige Fund A VI, LLC; Prestige Fund A VII,
LLC; Prestige Fund A IX, LLC; Prestige Fund B, LLC; Prestige Fund B II, LLC;
Prestige Fund B IV, LLC; Prestige Fund B V, LLC; Prestige Fund B VI, LLC;
Prestige Fund B VII, LLC; Prestige Fund B BTM I, LLC; Prestige Fund D, LLC;
Prestige Fund D III, LLC; Prestige Fund D IV, LLC; Prestige Fund D V, LLC;
Prestige Fund D VI, LLC; Prestige Fund D BTM I, LLC; WF Velocity I, LLC;
WF Velocity Fund IV, LLC; WF Velocity Fund V, LLC; WF Velocity Fund VI, LLC;
and WF Velocity Fund VII, LLC (collectively, **the Funds**) for their Complaint
against Defendants Daryl Heller and Heller Capital Group, LLC allege as follows:

### PRELIMINARY STATEMENT

1.    Daryl Heller, the CEO of Heller Capital, instituted a widescale
fraudulent scheme for the sale and operation of ATM units owned by the Funds.

2.    The Funds are separate LLCs composed of approximately 2700
investors who invested hundreds of millions in Heller's scheme for the purchase and
operation of well-over 30,000 ATMs.

3.    Heller made countless fraudulent representations to the Funds and
their investors regarding the ATMs he purchased, the operation of those ATMs, the
viability of the Funds' investments, and the profits being earned.

4.    Because of and in reliance on Heller's fraudulent representations about
the business scheme, the Funds entered into ATM Management Services
Agreements (MSAs) with Paramount Management Group, LLC from 2020 through

2

Lancaster County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

2023, under which Paramount initially received all revenues generated from the ATMs to cover operational costs and then certain monthly revenues were remitted to the Funds.

5.      Paramount ceased making its required monthly payments to the Funds in April 2024, so the Funds brought suit against Paramount for breach of the MSAs a few months later. *See Prestige Fund A, LLC, et al. v. Paramount Management Group*, LLC, No. CI-24-06012 (C.P. Lancaster) (Paramount Action).

6.      The Paramount Action ultimately resulted in a November 21, 2024 Consent Judgment against Paramount for $138,156,118.38, which also required Paramount to provide an inventory and rights and title to the ATMs the Funds owned.

7.      When Paramount did not comply with that Consent Judgment, contempt proceedings finally revealed Heller's fraud.

8.      As the Funds learned through the Paramount Action, the ATMs Heller claimed to have purchased for the Funds either (1) never existed, (2) were purchased but stayed in a warehouse, (3) were sold to more than one entity, and/or (4) were not purchased outright.

9.      Despite leaving the Funds with worthless investments and far less ATM assets than promised, Heller was not done defrauding the Funds. In the weeks after the Consent Judgment, Heller transferred money from Paramount to Heller Capital with the intent to defraud the Funds of the money they are owed under the Consent Judgment.

Lehigh County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

10.    The Funds now seek redress for Heller's years of fraudulent scheming and stolen investments and Heller's most recent attempts to defraud the Funds by transferring money to which they are entitled.

## PARTIES

11.    Plaintiff Prestige Fund A, LLC is a limited liability company organized under the laws of Pennsylvania.

12.    Plaintiff Prestige Fund A II, LLC is a limited liability company organized under the laws of Pennsylvania.

13.    Plaintiff Prestige Fund A IV, LLC is a limited liability company organized under the laws of Delaware.

14.    Plaintiff Prestige Fund A V, LLC is a limited liability company organized under the laws of Delaware.

15.    Plaintiff Prestige Fund A VI, LLC is a limited liability company organized under the laws of Delaware.

16.    Plaintiff Prestige Fund A VII, LLC is a limited liability company organized under the laws of Delaware.

17.    Plaintiff Prestige Fund A IX, LLC is a limited liability company organized under the laws of Delaware.

18.    Plaintiff Prestige Fund B, LLC is a limited liability company organized under the laws of Delaware.

19.    Plaintiff Prestige Fund B II, LLC is a limited liability company organized under the laws of Delaware.

Lackawanna County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

20.     Plaintiff Prestige Fund B IV, LLC is a limited liability company organized under the laws of Delaware.

21.     Plaintiff Prestige Fund B V, LLC is a limited liability company organized under the laws of Delaware.

22.     Plaintiff Prestige Fund B VI, LLC is a limited liability company organized under the laws of Delaware.

23.     Plaintiff Prestige Fund B VII, LLC is a limited liability company organized under the laws of Delaware.

24.     Plaintiff Prestige Fund B BTM I, LLC is a limited liability company organized under the laws of Delaware.

25.     Plaintiff Prestige Fund D, LLC is a limited liability company organized under the laws of Delaware.

26.     Plaintiff Prestige Fund D III, LLC is a limited liability company organized under the laws of Delaware.

27.     Plaintiff Prestige Fund D IV, LLC is a limited liability company organized under the laws of Delaware.

28.     Plaintiff Prestige Fund D V, LLC is a limited liability company organized under the laws of Delaware.

29.     Plaintiff Prestige Fund D VI, LLC is a limited liability company organized under the laws of Delaware.

30.     Plaintiff Prestige Fund D BTM I, LLC is a limited liability company organized under the laws of Delaware.

Lancaster County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

31.     Plaintiff WF Velocity I, LLC is a limited liability company organized under the laws of Delaware.

32.     Plaintiff WF Velocity Fund IV, LLC is a limited liability company organized under the laws of Delaware.

33.     Plaintiff WF Velocity Fund V, LLC is a limited liability company organized under the laws of Delaware.

34.     Plaintiff WF Velocity Fund VI, LLC is a limited liability company organized under the laws of Delaware.

35.     Plaintiff WF Velocity Fund VII, LLC is a limited liability company organized under the laws of Delaware.

36.     Defendant Daryl Heller is an adult individual and businessman who resides and conducts business in Lancaster County.

37.     Defendant Heller Capital Group, LLC is a limited liability company, with an office located at 415 North Prince Street, Suite 202, Lancaster, PA 17603.

38.     Heller is the CEO of Heller Capital.

39.     Upon information and belief, Heller Capital is the sole member of Paramount.

## JURISDICTION AND VENUE

40.     This Court has original jurisdiction to hear this action under 42 Pa.C.S. § 931.

41.     Under Pa.R.Civ.P. 2179, venue is proper in this Court because (1) Heller Capital's office is in Lancaster County; (2) Heller Capital regularly conducts business in Lancaster County; (3) the causes of action arose in Lancaster

Lancaster County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

County; and (4) a transaction or occurrence took place in Lancaster County out of
which the causes of action arose.

**FACTS**

**A.    Heller's business pitch**

42.    Heller began his business in the ATM marketplace over a decade ago.

43.    Later, around 2020, Heller began pitching ATM investments to the
Funds' investors.

44.    As set forth in his promotional materials for the investment, Heller
represented himself as an "entrepreneur, founding more than twelve companies
within the telecom, technology, agriculture, real estate and energy sectors."

45.    He further held himself out as having been in the "ATM space" since
February 2011 and having a background and strategy to generate revenue through
"monetization of ATMs with advertising revenue streams into the future."

46.    Heller described the "ATM model" as such:

> Our Core strategy is to participate in a mature and stable ATM space
> that has historical strong operating margins. This is done by accessing
> attractive real estate locations for ATMs that are strategically
> positioned for capitalizing next generation revenue opportunity,
> augmenting current and healthy surcharge operating margins through
> an enhanced monetization strategy.

47.    Heller further represented that, under this model, each Fund would
own a portfolio of ATM assets and the management company, Paramount, would
"source lucrative contracts with location owners" to place the ATMs and operate and
service the ATMs.

7

Lackawanna County Prothonotary E-Filed - 24 Feb 2025 10:25:50 AM
Case Number: CI-25-00491

48.     In turn, the portfolio of ATMs placed by Paramount would be aggregated to "normalize the return for investors," and keep "monthly payment consistent."

49.     As Heller further represented to the Funds' investors, the ATMs would be placed at "small chain convenience stores and retail stores, bodega and sundry shops (deli/grocery stores in metro markets), malls and travel plazas."

50.     In other words, Heller represented the business plan as follows: the Funds would own ATMs purchased with their investment money, the management company (Paramount) would place those ATMs and service them, the ATMs would generate revenue when used, and the Funds would receive a monthly return on the investment from the portfolio of ATMs.

51.     Heller represented the investment would generate monthly returns over the life of the investment.

52.     Heller made further representations about the viability of the investment in Q&A sections of the investment summary promotional materials.

53.     Heller represented that his management company, Paramount, committed to each investor the projected return each month based on a blended performance of the entire fund and, "in the rare occasion that the fund performance is lagging, management will share their portion of the revenue to bring up to the proforma amount."

Lackawanna County Prothonotary E-Filed - 24 Feb 2025 10:15:50 AM
Case Number: CI-25-00491

54.     In response to the question "Have you been hitting your projections,"
Heller stated in promotional materials "[w]e have paid distributions in full and on
time in all funds since we got involved in the business back in 2012."

55.     In reliance on Heller's representations about the ATM investments,
the Funds entered into MSAs with Paramount.

**B.     The MSAs and breach of the MSAs**

56.     Each of the Funds entered into an MSA with Paramount between 2020
and 2023.

57.     Under each of the MSAs, the Funds purchased ATMs.

58.     The investors in the Funds, which total over 2700, invested hundreds
of millions to purchase ATMs from Paramount under the MSAs.

59.     Bills of sale covering years 2017-2023 provided by Heller, through
Paramount, to the Funds showed the purchase of approximately 36,000 ATMs on
the Funds' behalf; yet, many of the bills of sale contained so-called placeholder
numbers, which could not be tied to any particular ATM (i.e., the placeholder
number was not the actual serial number of any ATM).

60.     Moreover, upon information and belief, the bills of sale provided by
Heller for purchases in 2023 did not reflect sufficient ATMs purchased based on the
amount invested by the Funds; hence, the bills of sale underreported the ATMs that
should have been purchased with the Funds' investments.

61.     Furthermore, Heller never supplied bills of sale for ATMs purchased in
2024, which should have shown an additional approximately 700 ATMs.

Lehigh County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

62.     In total, from 2017-2024, Heller, through Paramount, should have purchased in excess of 38,000 ATMs.

63.     Heller never purchased sufficient ATMs to cover the investments made by the Funds; his failure to do so was willful and done with intent to defraud the Funds.

64.     Following purchase of the ATMs, the ATMs belonged to the respective Funds or their members.

65.     Under the MSAs, Heller, through Paramount, agreed to provide management services for the Funds' ATMs including, among other things, placing the ATMs at retail locations, entering into location contracts, and operating and maintaining the ATMs for the benefit of the Funds.

66.     Paramount and the individual Funds agreed that Paramount would remit monthly a sum to the Funds—called the Monthly Revenue Remittance—and Paramount would keep, as a fee, certain revenues generated from the operation of the ATMs.

67.     While Paramount was timely issuing payment to the Funds under the MSAs, Heller provided updates on the Funds' investment.

68.     During a presentation in March 2023, for example, Heller again represented the viability of the ATMs in the Funds' portfolios and projected investments.

Lancaster County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

69.     Further, in February 2024, Heller represented that 34,000 ATMs belonging to the Funds were active and online, generating gross revenue in excess of $43 million.

70.     That representation, at the time it was made by Heller, was not true and he knew it not to be true.

71.     In Apil 2024, Heller, through Paramount, stopped issuing the Monthly Revenue Remittance to the Funds and never again resumed those payments.

72.     Upon information and belief, Heller at some point started using new investments to pay prior monthly obligations.

**C.    Paramount Action and consent judgment**

73.     After repeated unanswered demands on Heller and Paramount for the unpaid Monthly Revenue Remittance under the MSAs, the Funds filed the Paramount Action for breach of contract and injunctive relief.

74.     The Funds immediately sought a preliminary injunction, which was denied based on Heller's testimony about the viability of the Funds' investments.

75.     The Funds and Paramount began negotiations to settle the dispute.

76.     The parties negotiated a potential resolution of the Paramount Action in November 2024, under which Heller valued the Funds' ATM network at no less than $450,000,000.

77.     On November 21, 2024, the Court entered a Consent Judgment in the Funds' favor in the amount of $138,156.118.38.

78.     The Consent Judgment further ordered that, within 2 days, Paramount shall (1) supply to the Funds a complete inventory of all ATM Units

Lackawanna County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

purchased by the Funds, and (2) assign and transfer to the Funds the right, title, and interest to the Funds' ATM Units and the location agreements, permits, and other agreements for the ATM units.

79.     Heller and Paramount did not timely comply with the Consent Order.

**D.     Contempt in the Paramount Action and discovering the fraud**

80.     When Paramount did not comply with its obligations to provide the required information for the Funds to take title to the ATMs in the network, the Funds sought contempt, at which time they discovered Heller's fraud.

81.     For example, through contempt proceedings, the Funds learned that they never owned 38,000 ATMs, or even 36,000 ATMs, and that Paramount never managed anywhere close to either quantity of ATMs at any time.

82.     Paramount's then-Vice President of Information Systems testified on December 6, 2024 in a Paramount Action contempt hearing that Paramount only managed between 9,000 and 10,000 ATMs total at that time, not all of which belonged to the Funds.

83.     The contempt proceedings further revealed that after the Funds filed suit against Paramount, Heller, without consent or notice, sold off massive portions of the Funds' ATM network.

84.     It was also revealed that even prior to December 2024, the greatest number of ATMs that Paramount ever managed was only approximately 20,000 ATMs in total, not all of which belonged to the Funds.

85.     Of the 20,000 ATMs that Paramount managed at the height of its management, only 8,000 of the ATMs were so-called Paramount-owned, meaning

Lancaster County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

the greatest number of ATMs the Funds ever owned was a mere 8000 ATMs,

despite Heller accepting sums sufficient to purchase in excess of 38,000 ATMs and

despite Heller representing that no less than 34,000 ATMs were online and active

as late as February 2024.

86.    The balance of the ATMs under management by Paramount showed

yet more intentional misrepresentations by Heller to the Funds. Of the 20,000

ATMs under management at the height of Paramount's management, some 12,000

ATMs were so-called affiliated ATMs, meaning Heller had not purchased the ATMs

outright, as he said he would under the MSAs, but instead he purchased some

rights in some ATMs, but not the actual right to own the device and fully control its

use and profits.

87.    Essentially, Heller, upon information and belief, purchased partial

rights in thousands of ATMs solely so he could pad the number of ATMs under

management by Paramount, doing so to further his fraudulent scheme to induce

Fund investments.

88.    Because the Funds did not own all of the ATMs Paramount managed,

Heller's representation that the Funds owned over 30,000 ATMs was never true.

89.    Moreover, as Paramount eventually turned over information for rights

and title to the Funds' ATMs, the Funds learned that Heller orchestrated the

purchase of ATMs that he never even intended to place in locations for operation.

Lancaster County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

90.     For example, in 2020 through 2023, Heller entered into sales
agreements with TriData U.S., Inc. for the purchase of used ATM units for the
Funds.

91.     Upon present information and belief, Heller purchased in excess of
5000 ATMs from Tri-Data using Fund money.

92.     For some of purchase agreements with TriData, Heller explicitly
negotiated for over a year of storage for the ATM units.

93.     Nearly 3000 of the TriData-purchased ATMs never left the warehouse.

94.     Heller purchased them knowing he would never place them into
service and he purchased them solely so he could, and later did, represent to the
Funds that he was complying with his obligations under the investment scheme.

95.     In sum, Heller purchased in excess of 5,000 ATMs from TriData and no
less than approximately 3000 of those ATMs remain in warehouses, all at Heller's
request, and all to further his fraudulent scheme.

96.     Instead of ensuring that the ATMs were deployed to a location to begin
operation, as Heller represented to the Funds he would, Heller let those TriData-
purchased ATMs sit valueless in storage.

97.     Upon information and belief, Heller also did not purchase all of the
ATMs he represented he would.

98.     Upon information and belief, Heller also purchased ATM units in
which more than one investor group has title or interest.

14

Lackawanna County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

99.    For example, Heller represented to ATM investors (ones not participants in the Funds) in Michigan that he purchased 250 ATMs under an MSA, but more than half of those ATM serial numbers overlapped with serial numbers of ATMs Heller allegedly purchased for the Funds, and some of those overlaps span across multiple Funds.

100.    Further, Heller issued multiple bills of sale to individual Funds that reflected serial numbers already on bills of sale to other Funds, meaning he was double-selling ATM units over and over.

101.    Lastly, the Funds discovered that Heller left the Funds' remaining network in shambles.

102.    It was saddled with unpaid debts, totaling, upon information and belief, around $7 million.

103.    Also, the Funds learned that some of the ATMs had been pledged as collateral by Heller for loans that he subsequently defaulted on.

104.    Heller had not paid many vendors and locations for many months, resulting in thousands of ATMs being offline, replaced, and unavailable for the Funds to operate.

105.    Large portions of the network were subject to disputed ownership claims because Heller had not paid the persons or entities from whom various portfolios were purchased by Heller.

106.    In sum, Heller intentionally caused the Funds' remaining assets to be, effectively, valueless.

Lackawanna County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

## E.    Heller conveyances to Heller Capital

107.    Notably, after the Funds secured their Consent Judgment against Paramount on November 21, 2024, Heller authorized various transfers of funds from Paramount's accounts to Heller Capital.

108.    In the month after the Consent Judgment was entered, Paramount received $1,320,252.82, but disbursed over $2,000,000, including significant payments to Heller Capital.

109.    Indeed, Paramount acknowledged that it transferred $344,867.62 to Heller Capital in the month after the Consent Judgment.

110.    As Paramount represented in the Paramount Action, it laid off its staff on December 13, 2024, leaving it without any employees.

111.    Therefore, any of Paramount's financial transactions after that date could only be authorized by Heller, the CEO of Heller Capital, which is the sole member of Paramount.

112.    Heller made these transfers after the Funds' Consent Judgment against Paramount. *See* 12 Pa.C.S. § 5104(a).

113.    Upon information and belief, Heller made these transfers with the intent to hinder, delay, or defraud the Funds because (1) Heller retained possession or control of those funds after the transfer; (2) before the transfer, Heller had been sued or threatened with suit by the Funds, (3) the transfers constituted a substantial amount of Heller's assets; (4) the transfers occurred shortly after a substantial debt was incurred through the Consent Judgment. *See* 12 Pa.C.S. § 5104(b).

16

Lancaster County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

114.    Upon information and belief, Heller made additional voidable transfers to Heller Capital.

## COUNT I—FRAUD IN THE INDUCEMENT
### Funds v. Daryl Heller

115.    The foregoing paragraphs are incorporated by reference as if set forth in full herein.

116.    Fraud in the inducement exists where there is (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury was proximately caused by the reliance. *Seguro Medico, LLC v. Humphreys*, 313 A.3d 298, 312 (Pa. Cmwlth. 2024).

117.    Heller made representations that he would and did purchase ATMs that the Funds owned outright.

118.    Heller further represented that the purchased ATMs would be deployed by Paramount to retail locations and begin to generate fees that would ultimately result in a Monthly Revenue Remittance to the Funds and a profit on the investment.

119.    Heller also represented that the Funds owned in excess of 30,000 ATMs.

120.    These representations were material to the Funds, who invested and maintained their investment based on Heller's representations.

17

Lancaster County Prothonotary E-Filed - 24 Bab 2025 10:25:50 AM
Case Number: CI-25-00491

121.    But these representations were false because Heller either (1) did not purchase all of the ATMs he represented he would, (2) purchased ATMs that were never deployed to locations, (3) purchased ATM units in which more than one entity has title or interest, and/or (4) were not purchased outright.

122.    Moreover, at the time that Heller made the representations, he knew they were false.

123.    The Funds reasonably relied on those representations from Heller who, as the CEO of Heller Capital, which is the sole member of Paramount, claimed industry knowledge and successful experience in the ATM market.

124.    As a direct and proximate result of Heller's representations, the Funds suffered substantial damages.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in Plaintiffs' favor against Defendant Daryl Heller in an amount in excess of $50,000, plus interest, costs and expenses, and any other relief as the Court deems just and proper.

## COUNT II – FRAUDULENT MISREPRESENTATION
### Funds v. Daryl Heller

125.    The foregoing paragraphs are incorporated by reference as if set forth in full herein.

126.    Similar to fraud in the inducement, fraudulent misrepresentation exists where there is (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of the falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it;

Lancaster County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

(5) justifiable reliance on the misrepresentation; and (6) resulting injury proximately caused by the reliance. *Weston v. Northampton Personal Care, Inc.*, 62 A.3d 947, 960 (Pa. Super. 2013).

127.    Heller made representations that he would and did purchase ATMs that the Funds owned outright.

128.    Heller further represented that the purchased ATMs would be deployed by Paramount to retail locations and begin to generate fees that would ultimately result in a Monthly Revenue Remittance to the Funds and a profit on the investment.

129.    Heller also represented that the Funds owned in excess of 30,000 ATMs.

130.    These representations were material to the Funds, who invested and maintained that investment based on Heller's representation.

131.    But these representations were false because Heller either (1) did not purchase all of the ATMs he represented he would, (2) purchased ATMs that were never deployed to locations, (3) purchased ATM units in which more than one entity has title or interest, and/or (4) were not purchased outright.

132.    Moreover, at the time that Heller made the representations, he knew they were false.

133.    The Funds reasonably relied on those representations from Heller who, as the CEO of Heller Capital, which is the sole member of Paramount, claimed industry knowledge and successful experience in the ATM market.

Lancaster County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

134.    As a direct and proximate result of Heller's representations, the Funds suffered substantial damages.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in Plaintiffs' favor against Defendant Daryl Heller in an amount in excess of $50,000, plus interest, costs and expenses, and any other relief as the Court deems just and proper.

## COUNT III—VOIDABLE TRANSACTIONS
### Funds v. Daryl Heller and Heller Capital

135.    The foregoing paragraphs are incorporated by reference as if set forth in full herein.

136.    The Funds have a Consent Judgment in their favor against Paramount in the Paramount Action, entered on November 21, 2024.

137.    As such, the Funds are a creditor under the Pennsylvania Uniform Voidable Transactions Act. 12 Pa.C.S. § 5101.

138.    At the time the Consent Judgment was entered, Heller was the CEO of Heller Capital, which is the sole member of Paramount.

139.    Accordingly, Heller is a debtor under the Pennsylvania Uniform Voidable Transactions Act. 12 Pa.C.S. § 5101.

140.    Also, at the time the Consent Judgment was entered, Heller was the CEO of Heller Capital.

141.    Since the date of the Consent Judgment, Heller transferred at least $344,867.62 from Paramount to Heller Capital.

Lancaster County Prothonotary E-Filed - 24 Bab 2025 10:45:50 AM
Case Number: CI-25-00491

142.    Heller made these transfers with the intent to hinder, delay, or defraud the Funds because (1) Heller retained possession or control of those funds after the transfer; (2) before the transfer, Heller had been sued or threatened with suit by the Funds, (3) the transfers constituted a substantial amount of Heller's assets; (4) the transfers occurred shortly after a substantial debt was incurred through the Consent Judgment. *See* 12 Pa.C.S. § 5104(b).

143.    Upon information and belief, Heller made additional fraudulent transfers to Heller Capital.

144.    Heller's transfers of Paramount's funds to Heller Capital are fraudulent conveyances under the Pennsylvania Uniform Voidable Transactions Act. *See* 12 Pa.C.S. §§ 5104, 5105.

WHEREFORE, Plaintiffs respectfully request that this Court (1) void the transfers to satisfy the Funds' claims, 12 Pa.C.S. § 5104(a)(1); (2) issue an injunction against further disposition by Heller and Heller Capital of the transferred assets, 12 Pa.C.S. § 5104(a)(1); and (3) issue such other relief as the Court deems just and proper.

Lehigh County Prothonotary E-Filed - 24 Jan 2025 10:45:50 AM
Case Number: CI-25-00491

Respectfully submitted,

Dated: January 24, 2025

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
szimmer@kleinbard.com

*Attorneys for Plaintiffs*

Lancaster County Prothonotary E-Filed - 24 Feb 2025 10:45:50 AM
Case Number: CI-25-00491

## VERIFICATION

I, Jerry D. Hostetter, hereby state that I am President of Prestige Investment
Group, LLC, the sole member of Prestige Funds Management, LLC, President of
Prestige Funds Management II, LLC, President of Prestige Funds Management III, LLC,
and President of Prestige Investment Group, LLC, the Class A Designee Manager of
WF Velocity Funds Management, LLC, that I am authorized to make this verification on
behalf of Plaintiffs, and that the facts set forth in the foregoing Complaint are true and
correct to the best of my knowledge, information, and belief. I understand that the
statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to
unsworn falsification to authorities.

Dated: Jan 23, 2025

Lancaster County Prothonotary E-Filed - 24 Jan 2025 10:45:50 AM
Case Number: CI-25-00491

## CERTIFICATION OF COMPLIANCE WITH
## <u>CASE RECORDS PUBLIC ACCESS POLICY</u>

I certify that this filing complies with the provisions of the *Case Records
Public Access Policy of the Unified Judicial System of Pennsylvania* that require
filing confidential information and documents differently than nonconfidential
information and documents.

Dated: January 24, 2025

_____
Matthew H. Haverstick (No. 85072)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: mhaverstick@kleinbard.com

*Attorneys for Plaintiffs*

# EXHIBIT D

Lancaster Prothonotary E-Filed - 21 Mar 2025 09:53:45 AM
Case Number: CI-25-00491

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140                    *Attorneys for Plaintiffs*

## IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA
## CIVIL ACTION-LAW

|  |  |  |
|---|---|---|
| | : | |
| PRESTIGE FUND A, ET AL., | : | No. CI-25-00491 |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| DARYL HELLER and HELLER CAPITAL | : | |
| GROUP, LLC | : | |
| Defendants. | : | |
| | : | |

### PROOF OF SERVICE

I hereby certify that I caused the Complaint to be served on Defendant Heller

Capital Group, LLC via process server on Heller Capital Group's registered agent,

The Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street,

Wilmington, DE 19801. *See* Exhibit A.

Dated: March 21, 2025

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
*Attorneys for Plaintiffs*              szimmer@kleinbard.com

Lackawanna County Prothonotary E-Filed - 21 Mar 2025 09:53:45 AM
Case Number: CI-25-00491
CI-25-00491

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the United Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently from non-confidential information and documents.

Dated: March 21, 2025

Joshua J. Voss (No. 306853)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml:jvoss@kleinbard.com

*Attorneys for Plaintiffs*

Lancaster County Prothonotary E-Filed - 21 Mar 2025 09:53:45 AM
Case Number: CI-25-00491
CI-25-00491

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below, I caused a true and correct copy

of the foregoing Certificate of Service to be served upon the following via U.S. Mail:

Heller Capital Group, LLC
415 North Prince Street, Suite 200
Lancaster, PA 17603

Dated: March 21, 2025

Matthew H. Haverstick (No. 85072)
Joshua J. Voss (No. 306853)
Samantha G. Zimmer (No. 325650)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: 215-568-2000 | Fax: 215-568-0140
Eml: mhaverstick@kleinbard.com
jvoss@kleinbard.com
szimmer@kleinbard.com

*Attorneys for Plaintiffs*

Lancaster County Prothonotary E-Filed - 21 Mar 2025 09:53:45 AM
Case Number: CI-25-00491

CI-25-00491

# EXHIBIT A

Lancaster County Prothonotary E-Filed - 21 Mar 2025 09:53:45 AM
Case Number: CI-25-00491

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PA CIVIL ACTION-LAW

**PRESTIGE FUND A, LLC; PRESTIGE FUND A II, LLC;**
**PRESTIGE FUND A IV, LLC; PRESTIGE FUND A V, LLC;**
**PRESTIGE FUND A VI, LLC; PRESTIGE FUND A VII, LLC;**
**PRESTIGE FUND A IX, LLC; PRESTIGE FUND B, LLC;**
**PRESTIGE FUND BII, LLC; PRESTIGE FUND BIV, LLC;**
**PRESTIGE FUND BV, LLC; PRESTIGE FUND B VI, LLC;**
**PRESTIGE FUND B VII, LLC; PRESTIGE FUND B BTM I,**
**LLC; PRESTIGE FUND D, LLC; PRESTIGE FUND D III,**
**LLC; PRESTIGE FUND D IV, LLC; PRESTIGE FUND D V,**
**LLC; PRESTIGE FUND D VI, LLC; PRESTIGE FUND D**
**BTM I, LLC; WF VELOCITY I, LLC; WF VELOCITY FUND**
**IV, LLC; WF VELOCITY FUND V, LLC; WF VELOCITY**
**FUND VI, LLC; and WF VELOCITY FUND VII, LLC,**

Case No.: CI-25-00491

    *Plaintiff(s) / Petitioner(s)*

v.

**DARYL HELLER and HELLER CAPITAL GROUP, LLC**

    *Defendant(s) / Respondent(s)*

## AFFIDAVIT OF SERVICE

I, Lydia Hunter-Jones , being duly sworn, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is a party to this action.

I served the following documents to HELLER CAPITAL GROUP, LLC in New Castle County, DE on March 3, 2025 at 9:19 am at Corporate Trust Company -1209 Orange Street, Wilmington, DE 19801 by leaving the following documents with Nadia Bellamy who as Intake Specialist at The Corporate Trust Company is authorized by appointment or by law to receive service of process for HELLER CAPITAL GROUP, LLC. Proof Colorado, LLC also mailed these documents to The Corporation Trust Company to their last known address at Corporate Trust Company -1209 Orange Street, Wilmington, DE 19801 on March 7, 2025.

COMPLAINT PFA v. Heller CI-25-0491 (CP Lancaster 1.24.25)

Black or African American Female, est. age 25-34, glasses: Y, Black hair, 140 lbs to 160 lbs, 5' 6" to 5' 9".
Geolocation of Serve: https://google.com/maps?q=39.7482711,-75.5475501
Photograph: See Exhibit 1

Total Cost: $129.60

Signature
Lydia Hunter-Jones
+1 (302) 525-9147

Subscribed and sworn to before
me this _12_ day of
_March_ , _2025_, by
_____ .

Witness my hand and official
seal.

Notary Public

My commission expires:
_11.16.2026_

JEFF E. GRAF
Notary Public
State of Delaware
My Commission Expires on Nov 16, 2026

Lancaster County Prothonotary E-Filed - 21 Mar 2025 09:53:45 AM
Case Number: CI-25-00491

Exhibit 1a)

