**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

**SAXTON & STUMP LLC**
G. William Bartholomew, Esq.
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
T: (717) 556-1000
E: wbartholomew@saxtonstump.com

**STARK & STARK**
Marshall T. Kizner, Esq.
Joseph H. Lemkin, Esq.
P.O. Box 5315
Princeton, NJ 08543-5315
T: 609-791-7022
E: jlemkin@stark-stark.com
    mkizner@stark-stark.com

*Counsel for Plaintiffs-Counterclaim
Defendants Prestige Fund A, LLC, et al.*

| | |
|---|---|
| In re:<br><br>DARYL FRED HELLER,<br><br>     Debtor. | Case No. 25-11354 (JNP)<br><br>Chapter 11 |
| PRESTIGE FUND A, LLC, *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>DARYL HELLER and HELLER CAPITAL<br>GROUP, LLC,<br><br>     Defendants. | Adv. Pro. No. 25-01128 (JNP) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS
DARYL HELLER'S COUNTERCLAIMS AND STRIKE PORTIONS OF HIS ANSWER**

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT.................................................................................... 1

II.  STATEMENT OF FACTS .................................................................................... 5

III. STANDARD OF REVIEW .................................................................................... 8

IV.  ARGUMENT .......................................................................................................... 9

  A.  Heller's breach of fiduciary duty claim should be dismissed. ........................... 9

    1.  The claim is subject to the laws of Delaware and Pennsylvania. ............................. 9

    2.  Heller lacks standing to maintain breach of fiduciary duty claims against the Funds
        under Delaware and Pennsylvania law. ................... 10

    3.  Heller's breach of fiduciary duty claim does not meet the statutory prerequisites
        under Delaware or Pennsylvania law. .........................................................11

      a.  Heller's purported breach of fiduciary duty claim is an improper
          derivative claim..................................................................................11

      b.  Heller is not authorized under the applicable statutes to bring a
          derivative claim...................................................................................12

    4.  The Funds are not proper defendants to Heller's breach of fiduciary duty claim. .. 14

  B.  Heller's unjust enrichment claim must be dismissed....................................... 15

    1.  New Jersey law applies to Heller's unjust enrichment claim. ................................ 15

    2.  Heller's unjust enrichment claim fails because he did not confer a benefit upon the
        Funds.................................................................................................... 15

  C.  Heller's tortious interference claim must be dismissed. ................................... 17

    1.  New Jersey law applies to Heller's tortious interference claim.............................. 17

    2.  Heller has failed to plead the elements of a tortious interference claim. ................ 18

  D.  Heller's defamation claim must be dismissed................................................... 20

  E.  Heller's negligence claim must be dismissed. ................................................. 23

  F.  Heller's intentional and negligent misrepresentation claims must be dismissed............. 23

  G.  This Court should strike certain paragraphs of Heller's Answer and deem the
      corresponding allegations in the Funds' Complaint admitted........................... 26

V.   CONCLUSION...................................................................................................... 28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*A. & M. Wholesale Hardware Co., Inc. v. Circor Instrumentation Techs., Inc.*,
    C.A. No. 13-0475, 2014 WL 714938 (D.N.J. Feb. 24, 2014)......................................... 17

*Alvord-Polk, Inc. v. F. Schumacher & Co.*,
    37 F.3d 996 (3d Cir. 1994) ............................................................................................. 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................................... 8

*Conquest v. WMC Mortgage Corp.*,
    247 F. Supp. 3d 618  (E.D. Pa. Mar. 30, 2017) ........................................................... 10

*Davis v. Wells Fargo*,
    824 F.3d 333 (3d Cir. 2016) ............................................................................................. 8

*Dello Russo v. Nagel*,
    817 A.2d 426 (N.J. App. Div. 2003)............................................................................... 20

*Diversified Indus., Inc. v. Vinyl Trends, Inc.*,
    C.A. No. 13-6194, 2014 WL 1767471 (D.N.J. May 1, 2014) ..................................... 19

*Edgar v. MITE Corp.*,
    457 U.S. 624 (1982).......................................................................................................... 9

*Estate of Swift by Swift v. Northeastern Hosp.*,
    690 A.2d 719 (Pa. 1997) ................................................................................................. 23

*F.T.C. v. Hope Now Modifications, LLC*,
    No. Civ. 09-1204, 2011 WL 883202 (D.N.J. Mar. 10, 2011)...................................... 9

*Fagin v. Gilmartin*,
    432 F.3d 276 (3d Cir. 2005) ............................................................................................. 9

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) ........................................................................................... 24

*G.D. v. Kenny*,
    15 A.3d 300 (N.J. 2011).................................................................................................. 21

*Gibbs v. Ernst*,
   647 A.2d 882 (Pa. 1994) ................................................................................... 25

*Graham v. Muldoon*,
   Docket No. L-2240-07, 2010 WL 4940041 (N.J. Sup. Ct. App. Div. Dec. 7, 2010) ............... 25

*Grossman v. Barke*,
   868 A.2d 561 (Pa. 2005) ................................................................................... 23

*Harper-Lawrence, Inc. v. United Merchants and Mfrs., Inc.*,
   619 A.2d 623 (N.J. Super. Ct. App. Div. 1993)......................................................... 19

*Health Robotics, LLC v. Bennet*,
   No. 09-cv-0627, 2009 WL 5033966 (E.D. Pa. Dec. 22, 2009)...................................11

*Hill v. Ofalt*,
   85 A.3d 540 (Pa. Super. 2014) ............................................................................ 12

*In re BMT-NW Acquisition, LLC*,
   582 B.R. 846 (Bankr. D. Del. 2018) ......................................................................11

*In re Innovation Fuels, Inc.*,
   No. 11-12911 (DHS), 2013 WL 3835827 (Bankr. D.N.J. July 22, 2013)................................ 10

*In re Modell's Sporting Goods, Inc.*,
   Adv. Pro. No. 22-1076, 2023 WL 2961856 (Bankr. D.N.J. Apr. 14, 2023)........................ 9, 15

*In re PennySaver USA Publ'g, LLC*,
   587 B.R. 445 (Bankr. D. Del. 2018) ...................................................................... 13

*In re Tropicana Entm't, LLC*,
   520 B.R. 455 (Bankr. D. Del. 2014) ...................................................................... 10

*Kaufman v. i-Stat Corp.*,
   754 A.2d 1188 (N.J. 2000) ................................................................................. 25

*Kerrigan v. Otsuka America Pham., Inc.*,
   C.A. No. 12-4346, 2012 WL 5380663 (E.D. Pa. Nov. 1, 2012) ............................................. 21

*Krys v. Aaron*,
   106 F. Supp. 3d 472 (D.N.J. 2015) ...................................................................... 9, 10

*Lamorte Burns & Co., Inc. v. Walters*,
   770 A.2d 1158 (N.J. 2001)................................................................................. 19

*Lazer & Lazer Corp. v. Agronomed Pharms. LLC*,
    618 F. Supp. 3d 186 (E.D. Pa. 2022) ...................................................................... 17

*Loduca v. WellPet LLC*,
    549 F. Supp. 3d 391 (E.D. Pa. 2021) ...................................................................... 24

*MacDougall v. Weichert*,
    677 A.2d 162 (N.J. 1996) ...................................................................................... 18

*Mitchell v. Moore*,
    729 A.2d 1200 (Pa. Super. Ct. 1999) ..................................................................... 17

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997) ..................................................................................... 9

*Nelson v. Xacta 3000 Inc.*,
    Civ. No. 08-5426, 2009 WL 4119176 (D.N.J. Nov. 24, 2009) ............................... 16

*Newtek Small Bus. Fin., LLC v. Texas First Capital, Inc.*,
    644 F. Supp. 3d 113 (E.D. Pa. 2022) ...................................................................... 18

*Nikolin v. Samsung Elecs. Am., Inc.*,
    Civ No. 10-1456, 2010 WL 4116997 (D.N.J. Oct. 18, 2010) .................................. 15

*P.V. v. Camp Jaycee*,
    962 A.2d 453 (N.J. 2008) ...................................................................................... 15

*Pepe v. Gen. Motors Acceptance Corp.*,
    604 A.2d 194 (N.J. App. Div. 1992) ....................................................................... 20

*Perrong v. Liberty Power Corp, L.L.C.*,
    411 F. Supp. 3d 258 (D. Del. 2019) .......................................................................... 8

*Polzo v. County of Essex*,
    960 A.2d 375 (N.J. 2008) ...................................................................................... 23

*Printing Mart-Morristown v. Sharp Elecs. Corp.*,
    563 A.2d 31 (N.J. 1989) ........................................................................................ 18

*Prof'l Recovery Servs., Inc. v. Gen. Elec. Cap. Corp.*,
    642 F. Supp. 2d 391 (D.N.J. 2009) ........................................................................ 21

*Reifsnyder v. Pittsburgh Outdoor Advertising Co.*,
    173 A.2d 219 (Pa. 1961) ........................................................................................ 12

*Snyder v. Farnam Cos., Inc.*,
   792 F. Supp. 2d 712 (D.N.J. 2011) ............................................................ 15, 16, 17

*Susinno v. Work Out World, Inc.*,
   No. 15-5881 (PGS), 2017 WL 5798643 (D.N.J. Nov. 28, 2017) ................................ 8

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*,
   845 A.2d 1031 (Del. 2004) .................................................................. 12

*Trainor v. McGibney*,
   C.A. No. 2:24-08873, 2025 WL 1207595 (D.N.J. Apr. 25, 2025) .......................... 21

*Tulp v. Educational Comm'n for Foreign Med. Graduates*,
   376 F. Supp. 3d 531 (E.D. Pa. 2019) ..................................................... 24, 25

*U.S. v. Cusaac*,
   Civil No. 06-1231, 2008 WL 4792682 (D.N.J. Oct. 30, 2008) ............................... 26

*United States ex rel. Bookwalter v. UPMC*,
   946 F.3d 162 (3d Cir. 2019) ................................................................ 24

*VRG Corp. v. GKN Realty Corp.*,
   641 A.2d 519 (N.J. 1994) ................................................................... 15

*Weinberg v. Dinger*,
   524 A.2d 366 (N.J. 1987) ................................................................... 23

*Wilkerson v. New Media Tech. Charter Sch. Inc.*,
   522 F.3d 315 (3d Cir. 2008) .................................................................. 9

*Zoneraich v. Overlook Hosp.*,
   514 A.2d 53 (N.J. App. Div. 1986) ........................................................... 21

**Statutes and Rules**

6 Del.C § 18-1001 ................................................................................. 14

6 Del.C.§ 18-1002 ................................................................................. 13

15 Pa.C.S. § 8881(b) ............................................................................... 13

15 Pa.C.S. § 8883 .................................................................................. 14

42 Pa.C.S. § 8343(a) ............................................................................... 22

Fed. R. Bankr. P. 7008 ........................................................................... 4, 26

Fed. R. Bankr. P. 7012 ............................................................................................ 26

Fed. R. Civ. P. 8 ............................................................................................ 4, 26

Fed. R. Civ. P. 8(b) ............................................................................................ 26

Fed. R. Civ. P. 8(b)(1)(b) ............................................................................................ 26

Fed. R. Civ. P. 8(b)(5) ............................................................................................ 26

Fed. R. Civ. P. 8(b)(6) ............................................................................................ 26

Fed. R. Civ. P. 9(b) ............................................................................................ 24

Fed. R. Civ. P. 12(b)(1) ............................................................................................ passim

Fed. R. Civ. P. 12(b)(6) ............................................................................................ passim

Fed. R. Civ. P. 12(f) ............................................................................................ passim

N.J.S.A. 42:2C-57 ............................................................................................ 10

Plaintiffs-Counterclaim Defendants Prestige Fund A, LLC; Prestige Fund A II, LLC; Prestige Fund A IV, LLC; Prestige Fund A V, LLC; Prestige Fund A VI, LLC; Prestige Fund A VII, LLC; Prestige Fund A IX, LLC; Prestige Fund B, LLC; Prestige Fund B II, LLC; Prestige Fund B IV, LLC; Prestige Fund B V, LLC; Prestige Fund B VI, LLC; Prestige Fund B VII, LLC; Prestige Fund B BTM I, LLC; Prestige Fund D, LLC; Prestige Fund D III, LLC; Prestige Fund D IV, LLC; Prestige Fund D V, LLC; Prestige Fund D VI, LLC; Prestige Fund D BTM I, LLC; WF Velocity I, LLC; WF Velocity Fund IV, LLC; WF Velocity Fund V, LLC; WF Velocity Fund VI, LLC; and WF Velocity Fund VII, LLC (collectively, the **"**Funds") respectfully submit this memorandum of law in support of their motion for an Order:

(i) dismissing under FRCP 12(b)(1) and 12(b)(6) the counterclaims in the Answer, Affirmative Defenses, and Counterclaims filed by Defendant-Counterclaim Plaintiff Daryl Heller;

(ii) striking Heller's answers to certain paragraphs of the Funds' Complaint and deeming those paragraphs admitted under FRCP 12(f); and

(iii) granting the Funds such other and further relief as this Court deems just and proper.

## I.    PRELIMINARY STATEMENT

This case arises out of what Judge Leonard G. Brown III of the Court of Common Pleas of Lancaster County, Pennsylvania described in a related case as "a tangled web of business ventures, once shimmering with the allure of lucrative returns, now unraveling into a cautionary tale of business failures and betrayal." (*See* Declaration of G. William Bartholomew, dated July 22, 2025 (the "Bartholomew Dec."), Ex. A, at p. 1). As Judge Brown recognized, the common denominator in these matters is Heller. (*Id.*, at p. 7).

Heller is the Chief Executive Officer of Defendant Heller Capital Group, LLC. The Funds are separate limited liability companies comprising approximately 2,700 investors who

invested hundreds of millions of dollars in Heller's scheme for the purchase and operation of well over 30,000 automatic teller machines (ATMs). As the Funds' investors learned much to their detriment and dismay in late 2024, the business that Heller pitched and repeatedly assured them was healthy was an elaborate fraud. Heller made countless fraudulent representations to the Funds and their investors regarding the ATMs he purchased, the operation of those ATMs, the viability of the Funds' investments, and the profits being earned.

In April 2024, Paramount Management Group, LLC, a Heller-controlled company that managed the Funds' ATM-related investments, failed to make required monthly payments to the Funds. As a result of this default, the Funds initiated a lawsuit against Paramount in the Court of Common Pleas of Lancaster County, Pennsylvania styled *Prestige Fund A, LLC, et al. v. Paramount Management Group, LLC*, No. CI-24-06012 (the "Paramount Action"). The Paramount Acton ultimately resulted in a November 21, 2024 Consent Judgment against Paramount for $138,156,118.38, which also required Paramount to provide an inventory as well as right and title to the ATMs the Funds owned.

However, Paramount did not comply with the terms of the Consent Judgment, and in turn the Funds initiated contempt proceedings that finally revealed Heller's fraud. As the Funds learned through the contempt proceedings in the Paramount Action, the ATMs Heller claimed to have purchased for the Funds either (i) never existed, (ii) were purchased but stayed in a warehouse, (iii) were sold to more than one entity, and/or (iv) were not purchased outright. In addition, the Funds learned that Heller, in the weeks after entry of the Consent Judgment, transferred money from Paramount to Heller Capital with the intent to defraud the Funds of the money that they are owed. Due to Heller's egregious conduct, Judge Brown in the Paramount

Action entered an Order on January 10, 2025 holding both Paramount and Heller, personally, in contempt. (*See* Bartholomew Dec., Ex. A).

On January 24, 2025, the Funds filed the present action against Heller and Heller Capital in Lancaster County Court asserting the following causes of action: Count I – Fraud in the Inducement against Heller; Count II – Fraudulent Misrepresentation against Heller; and Count III – Voidable Transactions against Heller and Heller Capital. (ECF No. 3-1). On March 25, 2025, before answering the Funds' Complaint, Heller filed a Notice of Removal removing this case from Lancaster County Court to this Court. (ECF No. 1). In accordance with this Court's scheduling Order (ECF No. 14), Heller filed his Answer with Counterclaims on June 20, 2025 (ECF No. 10).

Heller's Counterclaims are not a model of clarity and contain no detailed material allegations. The pleading appears more geared toward providing Heller with legal cover to provide false information to the media for consumption by the public than to obtain any actual relief from this Court. In fact, Heller's Counterclaims served just this purpose as they provided the basis for a newspaper article published on July 1, 2025, under the title *Daryl Heller fires back against fraud lawsuit; claims investment managers trigger ATM network collapse*. (*See* Bartholomew Dec., Ex. B).

Heller's Counterclaims assert seven claims for (i) Breach of Fiduciary Duty; (ii) Unjust Enrichment; (iii) Tortious Interference with Contractual or Business Relations; (iv) Negligence; (v) Defamation; (vi) Fraudulent/Intentional Misrepresentation; and (vii) Negligent Misrepresentation. (*See* ECF No. 10). Each of these claims must be dismissed at the pleading stage under either Rule 12(b)(1) for lack of standing and/or Rule 12(b)(6) for failure to state a claim.

Heller's breach of fiduciary duty claim is fatally defective because he is not, nor does he plead that he is, a member of any of the Funds with standing to assert a breach of fiduciary duty claim. Heller also asserts his breach of fiduciary duty claims against the wrong parties – the Funds – when such claims are only appropriately brought **on behalf of** the Funds against a separate person or entity who owes fiduciary duties to the Funds.

Heller's other Counterclaims must be dismissed because Heller fails to plead any facts establishing one or more required elements of those claims. Heller's unjust enrichment claim fails because Heller did not, and cannot, plead the existence of any benefit conferred by Heller, personally, on the Funds. His tortious interference claim fails because he did not identify any contract or prospective business relationship to which he, personally, was a party that was interfered with whatsoever by the Funds. His defamation claim fails because he has not identified any defamatory statement with the requisite specificity. His negligence claim fails because he did not plead facts showing any duty running from the Funds to him. His intentional and negligent misrepresentation claims fail because he did not identify any misrepresentation made by the Funds to him that he relied on to his detriment. For these and other reasons discussed below, all of Heller's Counterclaims should be dismissed at the pleading stage.

In addition, Heller's Answer utterly fails to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure, made applicable to this case by Rule 7008 of the Federal Rules of Bankruptcy Procedure. Instead of "admit[ting] or deny[ing] the allegations asserted against" him as Rule 8 requires, Heller refused to substantively respond to 55 of the 144 paragraphs of the Funds' Complaint, instead stating that he "neither admits nor denies the allegations . . . and leaves Plaintiffs to their proofs." The allegations that Heller refused to admit or deny include basic factual allegations that are well within Heller's knowledge, such as where Heller resides

(ECF No. 3-1 ¶ 36), where Heller Capital's office is located (*id.* ¶ 37), and how long Heller has been involved in the ATM market (*id.* ¶ 42). In addition, for another 72 paragraphs of the Funds' Complaint, Heller asserts that he does not need to provide a substantive response because the allegations are legal conclusions. However, the majority of these paragraphs of the Funds' Complaint contain only factual allegations, including that Heller was the CEO of Heller Capital at the time the Consent Judgement was entered (*id.* ¶ 14) and that Heller transferred at least $344,867.62 from Paramount to Heller Capital after the Consent Judgment was entered (*id.* ¶ 141). Heller has not answered the Funds Complaint in good faith, which is on par with his history of flouting court rules. Accordingly, it is well within this Court's discretion under Rule 12(f) of the Federal Rules of Civil Procedure to strike Heller's deficient answers and deem the corresponding allegations in the Funds' Complaint to be admitted.

## II.    STATEMENT OF FACTS

As noted above, the Funds filed their Complaint against Heller and Heller Capital in Lancaster County Court on January 24, 2025, shortly after contempt proceedings in the Paramount Action uncovered Heller's fraud.[1] Seventeen days later, on February 10, 2025, Heller

---

[1]    In the Paramount Action, there had been a dispute over whether only Heller had authority to maintain a lawsuit on behalf of the Funds. On September 24, 2024 the parties in the Paramount Action filed a "Stipulation for Expansion of Time to Pursue Resolution" that, among other things, settled a dispute that had arisen over who has authority to pursue litigation on behalf of the Funds (the September 24, 2024 Stipulation). (*See* Bartholomew Dec., Ex. C). In relevant part, the September 24, 2024 Stipulation provided as follows:

> Upon the approval of this Stipulation by the Court, all defenses raised in the [Paramount Action] as to the authority of the Funds and/or acting Fund Managers or their members to pursue the [Paramount Action] shall be withdrawn, the Funds shall be deemed to have the authority to pursue the [Paramount Action] and no further opposition to the standing and authority of the Funds to pursue the [Paramount Action] shall be asserted in the event that the Stay is terminated.

(*Id.* ¶ 10).

filed for bankruptcy under Chapter 11. *See In re Daryl Fred Heller*, Case No. 25-11354 (Bankr.

D.N.J.). On March 25, 2025, before answering the Funds' Complaint, Heller filed a Notice of

Removal removing the Funds' case from Lancaster County Court to this Court. (ECF No. 1). On

June 18, 2025, this Court entered an order setting a deadline of June 20, 2025 for Heller to

answer the Funds' Complaint. (ECF No. 14). Heller filed his Answer and Counterclaims on June

20, 2025 (ECF No. 10), and Heller Capital filed its Answer on June 23, 2025 (ECF No. 11).

Heller's Counterclaims generally allege that Plaintiffs are to blame for all the woe that

has befallen Heller since his fraud was uncovered during the contempt proceedings against him

in late 2024. His pleading grasps for a villain, alternatively alleging that "Plaintiffs," the

"Managers of the Funds," or "Plaintiffs, who were managers of the Funds" engaged in ill-

described wrongful conduct – seemingly ignoring that only the Funds themselves are parties to

this lawsuit. (*See, e.g.*, ECF No. 10 ¶¶ 156, 159, 160). As an example of the muddled nature of

his Counterclaims, Heller alleges that "over the past several years" Plaintiffs have

"misappropriated approximately $75,000,000 of investment returns through the 'Management

Funds' which were owned by the Plaintiffs and Heller." (*Id.* ¶ 147). Heller does not even attempt

to provide any details about how Plaintiffs allegedly "misappropriated" this sum of money.

Further, a few paragraphs later, Heller contradicts this allegation by acknowledging that

---

The September 24, 2024 Stipulation also set forth a schedule for Heller and/or Paramount
to present settlement terms to the investors in the Funds, for the investors to vote on the proposal,
and for the payment of settlement funds should the settlement proposal be approved. (*Id.* ¶ 9).
The failure to adhere to this schedule would constitute a "Triggering Event" under the September
24, 2024 Stipulation. (*Id.*). The September 24, 2024 Stipulation further provided that, upon the
occurrence of a Triggering Event, "Jerry Hostetter shall immediately assume and majority and
super majority governing interest in and majority and super majority voting control of Prestige
Investment Group, LLC." (*Id.* ¶ 12). In other words, upon a Triggering Event, Jerry Hostetter
would control Prestige Investment Group, LLC, which in turn, through other manager-LLCs,
controls the Funds. Subsequently, a Triggering Event occurred, and Hostetter gained standing to
pursue litigation on behalf of the Funds. (*See* Bartholomew Dec., Ex. A, at p. 6).

Plaintiffs only took over operation of the ATM network (from Heller) in November 2024 (*see id.* ¶ 152), meaning Plaintiffs could not have "misappropriated" such sums "over the past several years."

Heller also generally alleges that Plaintiffs engaged in other misconduct that "caused approximately $290,000,000 in damages to Paramount and its affiliates, and in turn to the Funds' investors, and Heller through a pattern of tortious interference, fiduciary disregard, and gross negligence." (*Id.* ¶ 148). This alleged "misconduct" consists of "the hiring of private investigators, initiating lawsuits, and orchestrating negative media campaigns, that created fear and uncertainty among Paramount and its affiliates' key customers, vendors, and employees." (*Id.* ¶ 149). Remarkably, and characteristic of a fraudster, Heller faults Plaintiffs because they "failed to partner with Heller and refused to … conduct[] joint calls and develop[e] joint messaging/communication plans to assuage key customer and vendor concerns, which would have significantly mitigated losses of customers and vendors and maintained millions of dollars in revenue for payout to investors over the past few months." (*Id.* ¶ 153). In other words, Heller charges Plaintiffs with failing to cooperate with – or at minimum acquiesce to – his fraud to extend the life of his Ponzi scheme.

Furthermore, Heller alleges throughout his Counterclaims that "investors," "Paramount and its affiliates," and "Prestige investors" suffered damages. (*See, e.g.*, *id.* ¶¶ 167, 179, 185, 201). Yet, he fails to allege how he has any standing to pursue claims on behalf of these parties in his own name.

The allegations in Heller's Counterclaims are not only muddled and confusing, they are also insufficient as a matter of law to state any claim against the Funds. For reasons discussed

below, this Court should grant the Funds' motion in its entirety and enter an Order dismissing

Heller's Counterclaims and striking certain paragraphs of his Answer.

## III.    STANDARD OF REVIEW

The Funds move to dismiss certain of Heller's Counterclaims pursuant to Rule 12(b)(1)

for lack of standing. "Standing is a jurisdictional matter and thus a motion to dismiss for want of

standing is . . . properly brought pursuant to Rule 12(b)(1)." *Susinno v. Work Out World, Inc.*, No.

15-5881 (PGS), 2017 WL 5798643, at *1 (D.N.J. Nov. 28, 2017) (internal quotations marks and

citations omitted). "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial

or factual." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). "A facial

challenge contests the sufficiency of the pleadings, whereas a factual challenge contests the

sufficiency of jurisdictional facts." *Perrong v. Liberty Power Corp, L.L.C.*, 411 F. Supp. 3d 258,

262 (D. Del. 2019). "In reviewing a facial challenge, the Court considers only the allegations in

the complaint and any documents referenced in or attached to the complaint, in the light most

favorable to the plaintiff." *Id.* "In contrast, when reviewing a factual challenge, the Court may

weigh and consider evidence outside the pleadings." *Id.* (citing *Davis v. Wells Fargo*, 824 F.3d

333, 346 (3d Cir. 2016)). "In a factual challenge, 'no presumptive truthfulness attaches to

plaintiffs' allegations.'" *Id.* (quoting *Davis*, 824 F.3d at 346).

The Funds also seek dismissal of all of Heller's Counterclaims pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure for failure to state a claim.  Dismissal under Rule

12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The

Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

As for the portion of the Funds' motion seeking to strike certain paragraphs of Heller's Answer, "[t]he district court's decision whether to grant a motion to strike under Rule 12(f) is discretionary." *F.T.C. v. Hope Now Modifications, LLC*, No. Civ. 09-1204, 2011 WL 883202, at *2 (D.N.J. Mar. 10, 2011).

## IV.    ARGUMENT

### A.    Heller's breach of fiduciary duty claim should be dismissed.

#### 1.    The claim is subject to the laws of Delaware and Pennsylvania.

Heller's first Counterclaim is for breach of fiduciary duty. In deciding which state's law to apply, this Court follows the substantive choice of law rules of the forum state, which is New Jersey. *See In re Modell's Sporting Goods, Inc.*, Adv. Pro. No. 22-1076, 2023 WL 2961856, at *23 (Bankr. D.N.J. Apr. 14, 2023). New Jersey follows the "internal affairs doctrine," which "serves as a 'conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands.'" *Krys v. Aaron*, 106 F. Supp. 3d 472, 484 (D.N.J. 2015) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982)). Under this doctrine, 'the law of the state of incorporation [governs] internal corporate affairs.'" *Krys*, 106 F. Supp. 3d at 484 (quoting *Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005)).

Breach of fiduciary duty claims fall under the internal affairs doctrine. *See Krys*, 106 F. Supp. 3d at 486 ("[T]he court concludes that the law of the Cayman Islands, the place of the SPhinX entities incorporation, governs Plaintiffs' breach of fiduciary duty claim against Mr. Aaron."); *In re Innovation Fuels, Inc.*, No. 11-12911 (DHS), 2013 WL 3835827, at *6 (Bankr. D.N.J. July 22, 2013) ("The Court will therefore apply Delaware law in its determination of the state law claim based on the internal affairs of the Debtors, namely Count I alleging the Individual Defendants' breach of their fiduciary duties."). New Jersey has codified the internal affairs doctrine as it applies to limited liability companies in its Revised Uniform Limited Liability Company Act, N.J.S.A. 42:2C-57, which provides, in relevant part, that "[t]he law of the state or other jurisdiction under which a foreign limited liability company is formed governs: (1) the internal affairs of the company[.]"

Accordingly, pursuant to New Jersey conflict of laws rules, the laws of the state under which each of the Funds was organized governs Heller's breach of fiduciary duty claims against the Funds. Prestige Fund A, LLC and Prestige Fund A II, LLC were organized under the laws of Pennsylvania. (*See* Declaration of Jerry D. Hostetter, dated July 23, 2025 (the "Hostetter Dec."), ¶¶ 9-10). The rest of the Funds were organized under the laws of Delaware. (*See* Hostetter Dec. ¶¶ 11-33).

### 2. Heller lacks standing to maintain breach of fiduciary duty claims against the Funds under Delaware and Pennsylvania law.

Under both Delaware and Pennsylvania law, the "fundamental element to establish a breach of fiduciary duty is the existence of [a] fiduciary relationship between both parties." *Conquest v. WMC Mortgage Corp.*, 247 F. Supp. 3d 618, 634 (E.D. Pa. 2017) (applying Pennsylvania law); *see also In re Tropicana Entm't, LLC*, 520 B.R. 455, 470 (Bankr. D. Del. 2014) (applying Delaware law and stating that "[t]he elements of a breach of fiduciary duty

claim are (1) that the fiduciary duty exists and (2) that the fiduciary breached that duty"). For

Heller's breach of fiduciary duty claim to survive a motion to dismiss, he must plead plausible

facts sufficient to show a fiduciary relationship between the Funds and Heller. Heller's

Counterclaims fall woefully short of meeting this burden.

Instead, Heller's Counterclaims only contain the unsupported conclusion that "Plaintiffs

owed a fiduciary duty to investors, including Heller, Paramount and its affiliates." (ECF No. 10

¶ 164). However, Heller fails to even allege that he, individually, was a member of any of the

Funds. This is because he is not, and was never, a member of any of the Funds. (*See* Hostetter

Dec. ¶ 8). Heller's failure to plead any facts showing a fiduciary relationship running from the

Funds to himself entitles the Funds to dismissal of Heller's breach of fiduciary duty claims under

both Delaware and Pennsylvania law. *See In re BMT-NW Acquisition, LLC*, 582 B.R. 846, 864

(Bankr. D. Del. 2018) (applying Delaware law and dismissing breach of fiduciary duty claims for

failure to "plead sufficient facts showing a fiduciary relationship"); *see Health Robotics, LLC v.

Bennet*, No. 09-cv-0627, 2009 WL 5033966, at *6 (E.D. Pa. Dec. 22, 2009) (applying

Pennsylvania law and dismissing breach of fiduciary duty claims because certain plaintiffs "have

not alleged the existence of a fiduciary relationship between Defendants and" them).

> **3.      Heller's breach of fiduciary duty claim does not meet the statutory prerequisites under Delaware or Pennsylvania law.**

> > **a.      Heller's purported breach of fiduciary duty claim is an improper derivative claim.**

Heller's breach of fiduciary duty claim is also barred by the Delaware and Pennsylvania

statutes governing limited liability companies. Heller repeatedly alleges that the Funds'

purported breaches of fiduciary duty damaged the "investors" – without specifying what entity

these "investors" invested in, the nature of their investment, or whether he is among this group of

"investors." (*See* ECF No. 10 ¶¶ 147, 148, 155, 166-67).[2] Because Heller is asserting that the
"investors" were damaged, his purported breach of fiduciary duty claim is a derivative claim
under both Delaware and Pennsylvania law. *See Reifsnyder v. Pittsburgh Outdoor Advertising
Co.*, 173 A.2d 219, 320 (Pa. 1961) ("In determining whether a suit is direct or derivative the
allegations of the complaint germane to the cause of action must govern."); *Hill v. Ofalt*, 85 A.3d
540, 548 (Pa. Super. 2014) ("To have standing to sue individually, the shareholder must allege a
direct, personal injury – that is independent of any injury to the corporation – and the shareholder
must be entitled to receive the benefit of any recovery."); *Tooley v. Donaldson, Lufkin, &
Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) (to state a direct claim for breach of fiduciary
duty "[t]he stockholder must demonstrate that the duty breached was owed to the stockholder
and that he or she can prevail without showing an injury to the corporation"); *see also* 15 Pa.C.S.
§ 8881(b) ("A member maintaining a direct action under this section of [the Pennsylvania
Uniform Limited Liability Company Act of 2016] must plead and prove an actual or threatened
injury that is not solely the result of an injury suffered or threatened to be suffered by the limited
liability company.").

> **b.    Heller is not authorized under the applicable statutes to bring
> a derivative claim.**

Heller's Counterclaim for breach of fiduciary duty fails to satisfy the statutory
prerequisites of a derivative claim under both Pennsylvania and Delaware law. The Delaware
Limited Liability Company Act provides as follows:

---

[2]    Heller also alleges that "Paramount and its affiliates" were damaged by the Funds'
purported breaches of fiduciary duty. (*See* ECF No. 10 ¶¶ 148, 166). However, Heller asserts his
Counterclaims in his individual capacity, and not on behalf of "Paramount and its affiliates."
Accordingly, any allegation that "Paramount and its affiliates" were damaged is irrelevant to this
Court's evaluation of whether Heller has stated any claims against the Funds.

> In a derivative action, **the plaintiff must be a member or an assignee of a limited liability company interest** at the time of bringing the action and:
>
> > (1) At the time of the transaction of which the plaintiff complains; or
> >
> > (2) The plaintiff's status as a member or an assignee of a limited liability company interest had devolved upon the plaintiff by operation of law or pursuant to the terms of a limited liability company agreement from a person who was a member or an assignee of a limited liability company interest at the time of the transaction.

6 Del.C. § 18-1002 (emphasis supplied).

The Pennsylvania Uniform Limited Liability Act of 2016 states, in relevant part, as follows:

> (a) General rule.--Except as provided in subsection (b), in any action or proceeding brought by one or more members or managers of a limited liability company to enforce rights that the plaintiff claims could be, but have not been, asserted by the company, **each plaintiff has standing to commence and maintain the derivative action if the plaintiff**:
>
> > (1) **was a member or manager of the company** at the time of the transaction or conduct of which the plaintiff complains, or that the plaintiff's status as a member or manager devolved upon the plaintiff by operation of law from a person who was a member or manager at that time; and
> >
> > (2) continues to be a member or manager until the time of judgment, unless the failure to do so is the result of company action that:
> >
> > > (i) was done merely to eliminate derivative claims; or
> > >
> > > (ii) has the effect of a reorganization that does not affect the plaintiff's ownership of the business enterprise.

15 Pa.C.S. § 8883 (emphasis supplied).

Because Heller was not, and does not even allege that he was, a member, manager, or assignee of the Funds at any time, he does not meet the statutory prerequisites to have standing to bring a derivative claim against the Funds. *See In re PennySaver USA Publ'g, LLC*, 587 B.R. 445, 466-67 (Bankr. D. Del. 2018) ("If the claim is derivative, it fails because derivative claims can only be brought by members or assignees of LLCs.").

4.    **The Funds are not proper defendants to Heller's breach of fiduciary duty claim.**

Even if Heller were a member of the Funds with standing to bring derivative breach of fiduciary duty claims, which he is not, the Funds themselves would not be proper defendants to Heller's claims. The Pennsylvania and Delaware statutes governing limited liability companies only authorize derivative claims to "enforce a right of a limited liability company," *see* 15 Pa.C.S. § 8883, or to "bring an action … in the right of a limited liability company to recover judgment in its favor," *see* 6 Del.C. § 18-1001. Thus, a derivative action authorized by the Pennsylvania and Delaware statutes is brought **on behalf of** the limited liability company, not against it.[3]

Accordingly, Heller's breach of fiduciary duty claim against the Funds must be dismissed on the grounds that he has failed to plead any facts showing a fiduciary relationship between himself and the Funds, he has failed to meet the statutory prerequisites for a derivative claim under the Pennsylvania and Delaware statutes governing limited liability companies, and even if he had standing to assert a derivative claim, the Funds would not be proper defendant to such claim. Because there is no possible dispute that Heller is not and never was a member or manager of the Funds – and even if he were, the Funds themselves would not be proper defendants to his claim – Heller's breach of fiduciary duty claim should be dismissed with prejudice.

---

[3]    In a related context, it is well established under Delaware law that "a corporate entity" does "not owe fiduciary duties to its stockholders." *In re Wayport, Inc. Litig.*, 76 A.3d 296, 322-23 (Del. Ch. 2013). Accordingly, where "'[t]he only defendant is the corporate entity … there are no fiduciary duty claims.'" *Arnold v. Society for Sav. Bancorp, Inc.*, 678 A.2d 533, 539 (Del. 1996) (quoting *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992)).

**B.    Heller's unjust enrichment claim must be dismissed.**

**1.    New Jersey law applies to Heller's unjust enrichment claim.**

As noted above, this Court follows the substantive choice of law rules of the forum state,

which is New Jersey. *See In re Modell's Sporting Goods, Inc.*, Adv. Pro. No. 22-1076 (VFP),

2023 WL 2961856, at *23 (Bankr. D.N.J. Apr. 14, 2023). "New Jersey has adopted the 'most-

significant relationship' test of the Restatement of Conflict of Laws." *Snyder v. Farnam Cos.,

Inc.*, 792 F. Supp. 2d 712, 718 (D.N.J. 2011) (citing *P.V. v. Camp Jaycee*, 962 A.2d 453 (N.J.

2008)). There are two steps to this analysis. "The first step is to determine whether an actual

conflict of law exists, for if no conflict exists, the law of the forum state applies." *Id.* "Second, if

a conflict does exist, the Court must determine which state has the 'most significant relationship'

to the claim, by 'weigh[ing] the factors set forth in the Restatement section corresponding to the

plaintiff's cause of action.'" *Id.* (quoting *Nikolin v. Samsung Elecs. Am., Inc.*, Civ No. 10-1456,

2010 WL 4116997, at *3 (D.N.J. Oct. 18, 2010)).

With respect to an unjust enrichment claim, "[n]umerous courts have held that unjust

enrichment laws do not vary in any substantive manner from state to state." *Snyder*, 792 F. Supp.

2d at 723 (citing cases). Accordingly, "[s]ince no actual conflict exists, New Jersey law will be

applied to" Heller's unjust enrichment claim. *Id.*

**2.    Heller's unjust enrichment claim fails because he did not confer a
benefit upon the Funds.**

Under New Jersey law, to establish unjust enrichment, "a plaintiff must show both that

defendant received a benefit and that retention of that benefit without payment would be unjust."

*VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994). "The unjust enrichment

doctrine requires that plaintiff show that it expected remuneration at the time it **performed or

conferred a benefit on defendant** and that the failure of remuneration enriched defendant

beyond its contractual rights." *Id.* (emphasis supplied). Critically, "**a plaintiff must confer a benefit on the defendant to support an unjust enrichment claim**." *Snyder*, 792 F. Supp. 2d at 724 (emphasis supplied). "[T]his element has been interpreted by New Jersey courts as a requirement that 'the plaintiff allege a sufficiently direct relationship with the defendant to support the claim.'" *Id.* (quoting *Nelson v. Xacta 3000 Inc.*, Civ. No. 08-5426, 2009 WL 4119176, at *3 (D.N.J. Nov. 24, 2009)).

Here, Heller fails to state an unjust enrichment claim against the Funds because he does not identify any benefit that he conferred upon the Funds that would constitute unjust enrichment if retained by the Funds without remuneration to Heller. Rather, Heller's unjust enrichment claim is predicated only on his vague allegation that "Plaintiffs received $75,00[0],000 in cash that could have been appropriated to investors." (ECF No. 10 ¶ 169). Critically, Heller does not allege that he, personally, conferred a benefit of $75,000,000 upon the Funds (nor could he), and does not even claim that he is among the "investors" to whom he alleges the Funds should have "appropriated" that money. Heller also fails to plead any facts specifying why it is "unjust or inequitable for the Plaintiffs to retain" the alleged funds that are the purported subject of his unjust enrichment claim. (*Id.* ¶ 173). In essence, Heller seeks to hold the Funds liable **to him** for unjust enrichment solely on the ground that he claims they received money they should not have. This allegation is insufficient for Heller to sustain an unjust enrichment claim. Therefore, this Court should dismiss Heller's unjust enrichment claim on the grounds that he has failed to state a claim. *See Snyder*, 792 F. Supp. 2d at 724 ("Since Plaintiffs have failed to allege that they

purchased the Products directly from Defendants, they cannot rightfully expect any remuneration

from Defendants, since they never directly conferred a benefit on Defendants.").[4]

### C.    Heller's tortious interference claim must be dismissed.

### 1.    New Jersey law applies to Heller's tortious interference claim.

Heller's third Counterclaim is for "tortious interference with contractual or business

relations." (*See* ECF No. 10, at p. 28). The state law applicable to this claim is either that of New

Jersey, the forum state, or Pennsylvania, where Heller resides and conducts business. *See In re*

*Daryl Fred Heller*, Case No. 25-11354 (Bankr. D.N.J.), ECF No. 1, at p. 2 (listing a home

address in Lancaster County, Pennsylvania). As noted above, though, New Jersey's conflict of

law rules provide that when there is no actual conflict of laws, the law of the forum state – here,

New Jersey – will apply. *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 723 (D.N.J. 2011).

There is no actual conflict between New Jersey and Pennsylvania law for the purpose of

this motion to dismiss with respect to Heller's tortious interference claim.  "Under New Jersey

law, the elements of tortious interference with a contractual relationship claims and tortious

interference with a prospective economic advantage claims are nearly identical." *A. & M.*

*Wholesale Hardware Co., Inc. v. Circor Instrumentation Techs., Inc.*, C.A. No. 13-0475, 2014

WL 714938, at *8 (D.N.J. Feb. 24, 2014). "To state a claim for tortious interference with a

contractual relationship, the plaintiff must allege 1) a protectable right, i.e., a contract;

2) intentional and malicious interference with a protectable right 3) that causes a loss with

resulting damages." *Id.* (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31

---

[4]    Dismissal on this ground is also appropriate if Pennsylvania law applies to Heller's unjust
enrichment claim. One of the elements of an unjust enrichment claim under Pennsylvania law is
that there be "'benefits conferred on defendant by plaintiff.'" *Lazer & Lazer Corp. v. Agronomed*
*Pharms. LLC*, 618 F. Supp. 3d 186, 204 (E.D. Pa. 2022) (quoting *Mitchell v. Moore*, 729 A.2d
1200, 1203-03 (Pa. Super. Ct. 1999)). An unjust enrichment claim fails under Pennsylvania law
if, as here, the claimant did not "confer any benefit" upon the defendant. *See id.*

(N.J. 1989)). The elements of a tortious interference with prospective economic advantage claim

are the same, except "[t]he only distinction is that it must allege a prospective economic

advantage as the protectable right, as opposed to a contract." *Id.* (citing *MacDougall v. Weichert*,

677 A.2d 162, 174 (N.J. 1996)).

Pennsylvania law articulates the elements of a tortious interference claim slightly

differently, but in substance the elements are the same. These elements are:

> (1) the existence of a contractual relationship or prospective contractual
> relationship between the plaintiff and another party; (2) an intent on the part of the
> defendant to harm the plaintiff by interfering with that contractual relationship or
> preventing the relationship from occurring; (3) the absence of privilege or
> justification on the part of the defendant; and (4) the occasioning of actual
> damage as a result of defendant's conduct.

*Newtek Small Bus. Fin., LLC v. Texas First Capital, Inc.*, 644 F. Supp. 3d 113, 121 (E.D. Pa.

2022). Because the elements of a tortious interference claim under New Jersey and Pennsylvania

law are substantively identical, there is no conflict of laws and this Court may apply New Jersey

law to evaluate the sufficiency of Heller's tortious interference claim.

**2.     Heller has failed to plead the elements of a tortious interference claim.**

Heller's Counterclaims fail to plead each of the three elements of a tortious interference

claim under New Jersey law.

*First*, Heller fails to identify any contract or prospective business relationship to which

Heller, personally, was a party that was allegedly interfered with by the Funds. Rather, the gist of

Heller's tortious interference claim is that "Plaintiffs engaged in actions, including the hiring of

private investigators, initiating lawsuits, and orchestrating negative media campaigns, that

created fear and uncertainty among **Paramount and its affiliates'** key customers, vendors, and

employees." (ECF No. 10 ¶ 149 (emphasis supplied); *id.* ¶ 175 ("**Paramount and its affiliates**

had valid, ongoing contractual and business relationships with key customers and vendors."

(emphasis supplied)). Accordingly, because Heller has failed to identify any actual or prospective business relationship to which he, personally, was a party that was improperly interfered with by the Funds' actions, he has failed to state a tortious interference claim against the Funds. *See Diversified Indus., Inc. v. Vinyl Trends, Inc.*, C.A. No. 13-6194, 2014 WL 1767471, at *5 (D.N.J. May 1, 2014) (granting motion to dismiss tortious interference counterclaim where defendant failed "to identify any actual contract or customer affected by Plaintiff's alleged misconduct").[5]

*Second*, even if Heller had identified an actual or prospective personal business relationship that was allegedly interfered with by the Funds (which he has not), he fails to plausibly allege that such interference was "intentional and malicious." To constitute intentional and malicious interference sufficient to support a tortious interference claim "[t]he conduct must be both 'injurious and transgressive of generally accepted standards of common morality or of law.'" *Lamorte Burns & Co., Inc. v. Walters*, 770 A.2d 1158, 1170-71 (N.J. 2001) (quoting *Harper-Lawrence, Inc. v. United Merchants and Mfrs., Inc.*, 619 A.2d 623, 630 (N.J. Super Ct. App. Div. 1993)). Here, Heller alleges that the Funds engaged in the following tortious conduct: "the hiring of private investigators, initiating lawsuits, and orchestrating negative media campaigns." (ECF No. 10 ¶ 149). He fails to allege how any of these activities – none of which are tortious or illegal in their own right – rise to the level of "malicious" conduct. To the extent Heller claims that alleged defamatory statements made by the Funds support his tortious interference claim, that theory fails because Heller has "failed to identify specific words of

---

[5]     Heller's tortious interference claim would also be subject to dismissal on this ground under Pennsylvania law. *See Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1015 (3d Cir. 1994) (affirming dismissal of tortious interference claim where plaintiffs "have failed to identify with sufficient precision contracts and prospective contracts which were interfered with by the defendants").

defamation which led to tortious interference." *Dello Russo v. Nagel*, 817 A.2d 426, 434-35 (N.J.

Super. Ct. App. Div. 2003) (affirming dismissal of tortious interference claim). Accordingly,

Heller has failed to plead "intentional and malicious" conduct on the part of the Funds sufficient

to state a tortious interference claim.

 *Third*, Heller's Counterclaims do not claim that the Funds' alleged conduct caused a loss

to him, personally. Rather, Heller pleads that "Paramount and its affiliates" were allegedly

damaged by the Funds. (*See* ECF No. 10 ¶ 150 ("[M]any acquisition partners/agents moved

existing business to other ATM/BTM operators, and did not bring new business **to**

**Paramount/Affiliates** due to these issues." (emphasis supplied)); *id.* ¶ 151 ("Vendors critical **to**

**Paramount and its affiliates** … began to withhold or limit the cash supplied to ATMs[.]"

(emphasis supplied)); *id.* ¶ 175 ("**Paramount and its affiliates** had valid, ongoing contractual

and business relationships with key customers and vendors." (emphasis supplied))). Heller, at

best, alleges that he was damaged indirectly – apparently as a "Prestige investor" – by the

purported damage suffered by "Paramount and its affiliates." (ECF No. 10 ¶ 179). However,

such alleged indirect damage is not sufficient to entitle Heller to maintain a personal tortious

interference claim against the Funds. *See Pepe v. Gen. Motors Acceptance Corp.*, 604 A.2d 194,

196 (N.J. Super. Ct. App. Div. 1992) ("The law is clear and uniform: shareholders cannot sue for

injuries arising from the diminution in value of their shareholdings resulting from wrongs

allegedly done to their corporations."). Therefore, Heller has also failed to plausibly plead facts

establishing the third element of a tortious interference claim, and his claim should be dismissed

on this ground as well.

  **D. Heller's defamation claim must be dismissed.**

 Heller's fifth Counterclaim is for defamation. (*See* ECF No. 10, at p. 39). As with

Heller's tortious interference claim, the state law applicable to Heller's defamation claim is

either that of New Jersey, the forum state, or Pennsylvania, where Heller resides and conducts

business. For the purposes of this motion, there is no conflict between New Jersey and

Pennsylvania law because the elements of a defamation claim under New Jersey and

Pennsylvania law are substantially similar. *See Prof'l Recovery Servs., Inc. v. Gen. Elec. Cap.

Corp.*, 642 F. Supp. 2d 391, 407 n.12 (D.N.J. 2009) (holding that there is no conflict because

"[t]he elements of prima facie defamation under New Jersey, Ohio, and Pennsylvania law are

substantially similar").

Under New Jersey law, the elements of defamation are: "(1) that defendants made a false

and defamatory statement concerning [plaintiff]; (2) that the statement was communicated to

another person (and not privileged); and (3) that defendants acted negligently or with actual

malice." *G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011). In Pennsylvania, the elements of

defamation are established by statute. They are: "(1) the defamatory character of the

communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the

understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient

of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its

publication; (7) abuse of a conditionally privileged occasion (once proved by defendant)." *Prof'l

Recovery Servs., Inc.*, 642 F. Supp. 2d at 407 n.12 (citing 42 Pa.C.S. § 8343(a)).

Importantly, for the purpose of this motion, to state a defamation claim under New Jersey

or Pennsylvania law in a federal pleading, a plaintiff must, at minimum, "'identify the specific

allegedly defamatory statements.'" *Trainor v. McGibney*, C.A. No. 2:24-08873, 2025 WL

1207595, at *3 (D.N.J. Apr. 25, 2025) (quoting *Zoneraich v. Overlook Hosp.*, 514 A.2d 53, 63

(N.J. Super. Ct. App. Div. 1986)); *see also Kerrigan v. Otsuka America Pham., Inc.*, C.A. No. 12-

4346, 2012 WL 5380663, at *5 (E.D. Pa. Nov. 1, 2012) (citing to New Jersey and Pennsylvania

law and holding that the "conclusory allegations are insufficient as a matter of law, regardless of which state's law is applied, because it does not specifically identify any defamatory statements or the circumstances of the publication of that statement").

Heller's Counterclaims fail to identify any defamatory statements with the requisite specificity to state a defamation claim. As an initial matter, Heller's Counterclaims are fatally muddled with respect to who he alleges made any purported defamatory statements. Throughout the Counterclaims, Heller interchangeably alleges the purported defamers to be "Plaintiffs," the "Managers of the Funds," or "Plaintiffs, who were managers of the Funds." (*See* ECF No. 10 ¶¶ 156, 159, 160). The actual Plaintiffs in this case are the twenty-five Funds, not the managers of the Funds. In addition, to the extent Heller alleges that the "Funds" made any defamatory statements, he does not identify which of the twenty-five Funds (or which person as a representative of any Fund) made the allegedly defamatory statements. Because Heller does not specifically allege who made any of the alleged defamatory statements, he has not set forth sufficient facts to give proper notice of his claim to the Funds. Accordingly, he has not met the pleading requirements to state a defamation claim against the Funds under either New Jersey or Pennsylvania law.

Heller has also failed to sufficiently set forth the content of the alleged defamatory statements. At best, Heller's Counterclaims allude to "managers of the Funds" (i) failing to "acknowledge[] in court and public documents that there were thousands of monthly buybacks of ATMs" (ECF No. 10 ¶ 159); (ii) falsely representing that Heller was the sole owner and decision maker of "Management Funds" (*id.* ¶ 160); and (iii) misrepresenting that Heller "decided their compensation" (*id.* ¶ 161). These vague allusions to allegedly false or misleading representations fail to identify the alleged defamatory statements with sufficient specificity to put the Funds on

notice as to what statements Heller is claiming are defamatory. Accordingly, Heller has not met the pleading requirements to state a defamation claim against the Funds under either New Jersey or Pennsylvania law, and his defamation claim must be dismissed.

**E.    Heller's negligence claim must be dismissed.**

Heller's fourth Counterclaim for "negligence" must also be dismissed on the ground that Heller has failed to plead the elements of the claim. Fundamentally, the elements of a negligence claim under both Pennsylvania and New Jersey law require Heller to plead, among other things, a duty running from the Funds to him. *Grossman v. Barke*, 868 A.2d 561, 566 (Pa. 2005) ("Negligence is established by proving the following four elements '(1) a duty or obligation recognized by law; a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages.'" (quoting *Estate of Swift by Swift v. Northeastern Hosp.*, 690 A.2d 719, 722 (Pa. 1997)); *Polzo v. County of Essex*, 960 A.2d 375, 384 (N.J. 2008) ("In order to sustain a common law cause of action in negligence, a plaintiff must prove four core elements: '(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages.'" (quoting *Weinberg v. Dinger*, 524 A.2d 366 (N.J. 1987)).

As discussed above, Heller is not a member of any of the Funds. And Heller has not pled any other facts sufficient to infer that the Funds owed a legal duty to him. Accordingly, his Counterclaims fail to state any claim against the Funds under a theory of negligence, and the Funds are entitled to dismissal of this claim against them.

**F.    Heller's intentional and negligent misrepresentation claims must be dismissed.**

Heller's sixth and seventh Counterclaims are based on theories of fraudulent/intentional misrepresentation and negligent misrepresentation. To the extent Heller's Counterclaims are based on a fraud theory, they must be dismissed for failure to meet the federal pleading standard

for fraud. Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, [i]n alleging fraud or

mistake, a party must state with particularity the circumstances constituting fraud or mistake."

"To satisfy this requirement, 'a plaintiff must plead or allege the date, time and place of the

alleged fraud or otherwise inject precision or some measure of substantiation into a fraud

allegation.'" *Loduca v. WellPet LLC*, 549 F. Supp. 3d 391, 401 (E.D. Pa. 2021) (quoting

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). "Stated otherwise, 'Rule 9(b)'s

particularity requirement requires a plaintiff to allege all of the essential factual background that

would accompany the first paragraph of any newspaper story – that is, the who, what, when,

where and how of the events at issue.'" *Id.* (quoting *United States ex rel. Bookwalter v. UPMC*,

946 F.3d 162, 176 (3d Cir. 2019)). Here, Heller fails to plead fraud with any particularity.

Heller's Counterclaims do not specifically allege who made any alleged fraudulent

misrepresentation, the actual content of the misrepresentation, to whom the misrepresentation

was made, and when it was made. Accordingly, Heller's had failed to state a fraud claim against

the Funds.

Heller also fails to state a claim for both fraudulent/intentional and negligent

misrepresentation because he fails to allege any statement made by the Funds **to him** upon which

**he** justifiably relied that caused him damages. To maintain a common law fraud claim under

Pennsylvania law against the Funds, Heller must allege that (i) the Funds made a representation;

(ii) which was material to the transaction at hand; (iii) falsely, with knowledge of its falsity or

recklessness as to whether it was true or false; (iv) with an intent of misleading Heller into

relying on it; (v) Heller justifiably relied on the misrepresentation; and (vi) the resulting injury

was proximately caused by the reliance. *Tulp v. Educational Comm'n for Foreign Med.*

*Graduates*, 376 F. Supp. 3d 531, 543-44 (E.D. Pa. 2019) (citing *Gibbs v. Ernst*, 647 A.2d 882,

889 (Pa. 1994)). Negligent misrepresentation under Pennsylvania law only differs from intentional misrepresentation – that is, fraud – "'in that to commit the former, the speaker need not know his or her words are untrue, but must have failed to make reasonable investigation of the truth of those words.'" *Id.* (quoting *Gibbs*, 647 A.3d at 890). The elements of both claims under New Jersey law are materially the same.[6]

Heller's Counterclaims allege only that non-parties relied on purported misrepresentations made to them. Heller's claims are not based on any misrepresentations made by the Funds to him upon which he relied. This pleading deficiency is fatal to Heller's fraudulent/intentional and negligent misrepresentation claims. *See Tulp*, 376 F. Supp. 3d at 544 ("[T]he Complaint … does not allege that Plaintiff, as opposed to some other party, relied on those purportedly false representations."); *Graham v. Muldoon*, Docket No. L-2240-07, 2010 WL 4940041, at *5 (N.J. Super. Ct. App. Div. Dec. 7, 2010) ("The Supreme Court has recognized that reliance is an essential element of a claim based upon misrepresentation." (citing *Kaufman v. i-Stat Corp.*, 754 A.2d 1188 (N.J. 2000)). Accordingly, Heller's claims for fraudulent/intentional and negligent misrepresentation must be dismissed for failure to state a claim.

---

[6]    "To set forth a claim for fraudulent misrepresentation, a plaintiff must adequately allege '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Abira Med. Labs., LLC v. United HealthCare Servs., Inc.*, C.A. No. 24-7375, 2025 WL 965706, at *6 (D.N.J. Mar. 31, 2025) (quoting *Suarez v. E. Int'l Coll.*, 50 A.3d 75, 85 (N.J. Super. Ct. App. Div. 2012). "Similarly, to plead a claim for negligent misrepresentation, a plaintiff must adequately allege '[a]n incorrect statement, negligently made and justifiably relied on, which results in economic loss.'" *Id.* (quoting *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006)).

**G.      This Court should strike certain paragraphs of Heller's Answer and deem the corresponding allegations in the Funds' Complaint admitted.**

Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, Rule 8 of the Federal Rules of Civil Procedure applies in adversary proceedings. Rule 8 requires a party responding to a pleading to "admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. 8(b)(1)(B). "A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial." Fed. R. Civ. P. 8(b)(5). "An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). This Court may strike Heller's responses to the Funds' Complaint that do not comply with Rule 8 and deem those allegations admitted under Rule 12(f) of the Federal Rules of Civil Procedure, made applicable to this case by Rule 7012 of the Federal Rules of Bankruptcy Procedure. *See Madjar v. State of N.J. Dep't of Corr.*, Civ. No. 92-5265, 1993 WL 152066, at *5 (D.N.J. Apr. 5, 1993).

For 55 of the 144 paragraphs in the Funds' Complaint, Heller answered solely that he "neither admits nor denies the allegations … and leaves Plaintiffs to their proofs." (ECF No. 10 ¶¶ 11-37, 39, 42-48, 67-68, 82, 84-85, 89-93, 96-98, 107-110, 116, 126, 136). Because these are not sufficient denials under the federal pleading rules, they constitute admissions. *See U.S. v. Cusaac*, Civil No. 06-1231, 2008 WL 4792682, at *2 (D.N.J. Oct. 30, 2008). It is demonstrative of Heller's bad faith in responding to the Funds' Complaint that he even failed to admit or deny basic facts about his business and Heller Capital, the business of which he is the CEO, including the following:

    a.   "Defendant Daryl Heller is an adult individual and businessman who resides and conducts business in Lancaster County." (ECF No. 3-1 ¶ 36).

b.  "Defendant Heller Capital Group, LLC is a limited liability company, with an office located at 415 North Prince Street, Suite 202, Lancaster, PA 17603." (*Id.* ¶ 37).

c.  "Heller began his business in the ATM Marketplace over a decade ago." (*Id.* ¶ 42).

Accordingly, this Court should enter an Order striking Heller's Answer to paragraphs 11-37, 39, 42-48, 67-68, 82, 84-85, 89-93, 96-98, 107-110, 116, 126, 136 of the Complaint and deeming these allegations admitted.

For another 72 of the 144 paragraphs of the Funds' Complaint, Heller neither admits nor denies the allegations, at least partly on the ground that they constitute legal conclusions.[7] Several of these paragraphs in the Funds' Complaint allege that Heller made certain factual representations, and in no way constitute legal conclusions. (*See* ECF No. 3-1 ¶¶ 49-54, 69, 117-119, 127-129). In addition, Heller neither admits nor denies (on the ground that they constitute legal conclusions) the following factual averments in the Funds' Complaint: "[A]t the time the Consent Judgment was entered, Heller was the CEO of Heller Capital," (*id.* ¶ 140),[8] and "[s]ince the date of the Consent Judgment, Heller transferred at least $344,867.62 from Paramount to Heller Capital." (*id.* ¶ 141). These paragraphs in no way constitute legal conclusions. Accordingly, this Court should enter an Order striking Heller's Answer to paragraphs 49-54, 69, 117-119, 127-129, 140-141 of the Funds' Complaint and deem these allegations admitted.

---

[7]    Specifically, for some of these paragraphs, Heller neither admits nor denies the allegation on the ground that the entire allegation constitutes a legal conclusion. (ECF No. 10 ¶¶ 5-6, 40-41, 63-64, 81, 83, 86-88, 94-95, 99-106, 111-114, 117-124, 127-134. 137-144). For the rest of these paragraphs, Heller neither admits nor denies the allegation and leaves Plaintiffs to their proofs, and also neither admits nor denies the allegation and leaves Plaintiffs to their proofs to the extent the allegation "constitutes a legal conclusion." (ECF No. 10 ¶¶ 49-59, 61-62, 65-66, 69, 73-79).

[8]    Heller Capital's Answer admits this paragraph. (*See* ECF No. 11 ¶ 140).

## V.    CONCLUSION

Therefore, for the foregoing reasons, the Funds respectfully request that this Court enter

an Order (i) dismissing Heller's Counterclaims in their entirety pursuant to Rules 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure; (ii) striking Heller's answers to paragraphs 11-

37, 39, 42-54, 67-69, 82, 84-85, 89-93, 96-98, 107-110, 116-119, 126-129, 136, and 140-141 of

the Funds' Complaint and deeming those paragraphs of the Complaint to be admitted pursuant to

Rule 12(f) of the Federal Rules of Civil Procedure; and (iii) granting the Funds such other and

further relief as this Court deems just and proper.


Respectfully submitted,

**SAXTON & STUMP LLC**


Dated: July 22, 2025            By: */s/ G. William Bartholomew, Esq.*
                                    G. William Bartholomew, Esq.
                                    280 Granite Run Drive, Suite 300
                                    Lancaster, PA 17601
                                    T: (717) 556-1000
                                    E: wbartholomew@saxtonstump.com

                                    **STARK & STARK**
                                    Marshall T. Kizner, Esq.
                                    Joseph H. Lemkin, Esq.
                                    P.O. Box 5315
                                    Princeton, NJ 08543-5315
                                    T: 609-791-7022
                                    E: jlemkin@stark-stark.com
                                        mkizner@stark-stark.com

                                    *Counsel for Plaintiffs-Counterclaim*
                                    *Defendants Prestige Fund A, LLC, et al.*