| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **McMANIMON, SCOTLAND & BAUMANN, LLC**<br>75 Livingston Avenue, Second Floor<br>Roseland, New Jersey 07068<br>(973) 622-1800<br>Anthony Sodono, III (asodono@msbnj.com)<br>Sari B. Placona (splacona@msbnj.com)<br>*Counsel to Daryl Fred Heller* | |
| In re:<br><br>DARYL FRED HELLER,<br><br>Debtor. | Chapter 11<br><br>Case No. 25-11354 (JNP) |
| PRESTIGE FUND A, LLC *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>DARYL HELLER AND HELLER CAPITAL GROUP, LLC<br><br>Defendants. | Adv. Pro. 25-01128 (JNP) |

**OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS DEBTOR'S COUNTERCLAIMS AND STRIKE PORTIONS OF HIS ANSWER**

Defendant-Counterclaimant Daryl Heller ("Heller"), by and through his attorneys, McManimon, Scotland & Baumann, LLC, herby submits his opposition (the "Opposition") to Plaintiffs Prestige Fund A, LLC; Prestige Fund A II, LLC; Prestige Fund A IV, LLC; Prestige Fund A V, LLC; Prestige Fund A VI, LLC; Prestige Fund A VII, LLC; Prestige Fund A IX, LLC; Prestige Fund B, LLC; Prestige Fund B II, LLC; Prestige Fund B IV, LLC; Prestige Fund B V, LLC; Prestige Fund B VI, LLC; Prestige Fund B VII, LLC; Prestige Fund B BTM I, LLC; Prestige Fund D, LLC; Prestige Fund D III, LLC; Prestige Fund D IV, LLC; Prestige Fund D V, LLC; Prestige Fund D VI, LLC; Prestige Fund D BTM I, LLC; WF Velocity I, LLC; WF Velocity Fund IV, LLC; WF Velocity Fund V, LLC; WF Velocity Fund VI, LLC; and WF Velocity Fund VII, LLC (collectively,

1

"Prestige") Motion to Dismiss Heller's Counterclaims and Strike Portions of his Answer (the "Motion to Dismiss/Strike").[1] ECF 20. Heller submits as follows:

## STATEMENT OF FACTS

1. On January 24, 2025, Prestige filed an action in the Court of Common Pleas of Lancaster County Pennsylvania's Civil Division, entitled *Prestige Funds A, LLC, et al. v. Daryl Heller and Heller Capital Group, LLC*, bearing the docket number CI-24-00491 (the "Pennsylvania Action"). See Motion to Dismiss/Strike, at pg. 3.

2. On February 10, 2025 (the "Petition Date"), Heller filed a voluntary petition for relief in the United States Bankruptcy Court, District of New Jersey ("Bankruptcy Court") pursuant to Chapter 11 of Title 11 of the United States Code. Case No. 25-11354; ECF 1.

3. On March 25, 2025, Heller filed a Notice of Removal thereby removing the Pennsylvania Action from the Court of Common Pleas of Lancaster County Pennsylvania's Civil Division to the Bankruptcy Court. ECF 1.

4. In accordance with this Court's scheduling Order [ECF 14], on June 20, 2025, Heller filed his Answer, Affirmative Defenses, and Counterclaims [ECF 10] (the "Answer and Counterclaims"). See Motion to Dismiss/Strike, at pg. 3.

5. On July 22, 2025, Prestige filed its Motion to Dismiss/Strike [ECF 20] Heller's Answer and Counterclaims [ECF 10]. Id.

## LEGAL ARGUMENT

### I. Heller's Breach of Fiduciary Duty Claim Must not be Dismissed

1. Prestige argues Counterclaim One, Breach of Fiduciary Duty, in Heller's Answer and Counterclaims must be dismissed for (i) lack of standing, and (ii) failure to meet the statutory

---

[1] Undefined capitalized terms used herein shall have the same meaning as ascribed in the Motion to Dismiss/ Strike.

2

4937-2380-5022, v. 1

prerequisites under Delaware or Pennsylvania law as an improper derivative claim. See Motion to Dismiss/Strike, at pgs. 9-14. For purposes of Counterclaim One, Heller does not dispute Prestige's argument that Pennsylvania law shall apply to Prestige Fund A, LLC and Prestige Fund A II, LLC, as being organized under the laws of Pennsylvania, and Delaware law shall apply to the rest of Prestige's claims as being organized under the laws of Delaware. Id., at pg. 10.

2. Prestige admits in the Motion to Dismiss/Strike that "Paramount Management Group, LLC, [was] a Heller-controlled company." See Motion to Dismiss/Strike, at pg. 2. As expressed in the Answer and Counterclaims, "as a direct result, many longstanding customers with a history of a ninety-five percent (95%) renewal rate terminated their contracts because of Plaintiffs' actions and out of fear of a hostile takeover of Paramount and its affiliates [by Plaintiffs]." See Answer and Counterclaims, at ¶ 50.

3. Plaintiffs, either in their corporate capacities or through the managers of the Fund, owed a fiduciary duty to Paramount and its affiliates, either as managing investor funds, soliciting investments, or controlling or advising on asset deployment. In turn, with Plaintiffs owing fiduciary duties to Paramount and its affiliates, the Plaintiffs owed said fiduciary duties to Heller as Paramount was a "Heller-controlled company." See Motion to Dismiss/Strike, at pg. 2.

4. Heller has standing to assert claims against Prestige either directly or derivatively, based on his prior control and continuing financial interest in Paramount. As a former controller of Paramount, Heller has standing to assert derivative claims for breach of fiduciary duty against Plaintiffs. After acquiring control of Paramount, Plaintiffs owed fiduciary duties to the company and its stakeholders, including Heller as Paramount's funds are vital to Heller's creditors in his bankruptcy case. Plaintiffs' self-dealing, misappropriation of assets, and failure to act in Paramount's best interests caused direct harm to the company, giving rise to derivative claims that

3

Heller is entitled to pursue. See Answer, at ¶¶ 146-167. In fact, it is contradictory for Plaintiffs to assert similar claims, which should be on behalf of fund managers, not the Plaintiffs-entities. Thus, if Plaintiffs have standing to pursue their causes of action, Heller similarly does for his Counterclaims as an owner of Prestige Investment Group ("Prestige Group").

5. Even if the Court were to find Heller did not have standing to pursue a derivative action against Plaintiffs, Heller has standing to support a direct claim for breach of fiduciary duties against Plaintiffs. Plaintiffs' breach of fiduciary duties of Paramount caused direct harm to Heller, who retained a financial interest in Paramount's success for the benefit of creditors. By diverting assets and engaging in self-dealing, Plaintiffs reduced the value of the estate and impaired Heller's recovery, giving rise to a direct claim for breach of fiduciary duty. Id.

6. Thus, with Heller having established standing for either a derivative or direct claim for breaches of fiduciary duties by Plaintiffs against Paramount and its affiliates, the Motion to Dismiss/ Strike must be denied on those same grounds.

## II. Heller's Unjust Enrichment Claim Must not be Dismissed

7. Prestige argues Counterclaim Two, Unjust Enrichment, in Heller's Answer and Counterclaims must be dismissed because he did not confer a benefit to the Plaintiffs. See Motion to Dismiss/Strike, at pgs. 15-17. For purposes of Counterclaim Two, Heller does not dispute Prestige's argument that New Jersey law applies. Id., at pg. 15.

8. Heller submits that Plaintiffs received a benefit when they received $75,000,000 in cash and additional multi-millions of dollars since the November 2024 takeover of Paramount, which they knowingly retained for personal benefit and litigation efforts, not for the benefit of investors. See Answer and Counterclaims, at ¶¶ 163-167. Therefore, Plaintiffs retained funds that

should have been provided to investors – including Heller – which occurred both pre- and post-takeover of Paramount.

9.     Under New Jersey law, a plaintiff need not personally or voluntarily confer a benefit to sustain an unjust enrichment claim. What matters is that the defendant knowingly retained a benefit under circumstances that make such retention inequitable. In <u>Thieme v. Aucoin-Thieme</u>, 227 N.J. 269 (2016), the Court imposed a constructive trust based on non-monetary contributions during cohabitation, recognizing that unjust enrichment may arise even absent a direct transfer of funds.

10.    Heller has sufficiently pled plausible facts to support the elements of unjust enrichment, thus the Motion to Dismiss/ Strike must be denied on those same grounds.

### III.    **Heller's Tortious Interference Claim Must not be Dismissed**

11.    Prestige argues Counterclaim Three, Tortious Interference, in Heller's Answer and Counterclaims must be dismissed because he failed to plead the elements of same. <u>See</u> Motion to Dismiss/Strike, at pgs. 17-20. For purposes of Counterclaim Three, Heller does not dispute Prestige's argument that New Jersey law applies. <u>Id.</u>, at pg. 17.

12.    Plaintiffs engaged in a coordinated campaign to destabilize Paramount and its affiliates' business relationships, knowing their importance and intending to disrupt them. <u>See</u> Answer and Counterclaims, at ¶¶ 174-179. Plaintiffs' actions -- ranging from baseless litigation, media manipulation, and frivolous spending on private investigators -- caused customers and vendors to sever ties with Paramount and its affiliates, resulting in massive financial harm. <u>Id.</u> Thus, because Paramount was a Heller-controlled entity, Plaintiffs actions directly damaged Heller and were done so to be, "injurious and transgressive of generally accepted standards of common morality or of law.'" <u>Lamorte Burns & Co., Inc. v. Walters</u>, 770 A.2d 1158, 1170-71 (N.J. 2001).

13.  Therefore, Heller has sufficiently pled plausible facts establishing his claim for tortious interference.

## IV. Heller's Negligence Claim Must not be Dismissed

14.  Prestige argues Counterclaim Four, Negligence, in Heller's Answer and Counterclaims must be dismissed because he failed to plead the elements of same. See Motion to Dismiss/Strike, at pg. 23. For purposes of Counterclaim Three, Heller does not dispute Prestige's argument that New Jersey law applies. Id., at pg. 17.

15.  Heller submits, both under New Jersey and Pennsylvania law, that he has satisfied the elements of negligence as follows: (i) Plaintiffs owed Paramount and its affiliates and Prestige investors, including Heller, a duty to act with reasonable case in managing the ATM/BTM network, (ii) Plaintiffs breached the duties by selecting unqualified operators, ignoring risks and prioritizing frivolous litigation, (iii) such breaches directly caused operation failures, and (iv) damages resulted from Plaintiffs' acts. See Answer and Counterclaims, at ¶¶ 181-185.

16.  Thus, Heller has sufficiently pled plausible facts establishing his claim for negligence.

## V. Heller's Defamation Claim Must not be Dismissed

17.  Prestige argues Counterclaim Five, Defamation (Libel/ Slander), in Heller's Answer and Counterclaims must be dismissed because he failed to plead the elements of same. See Motion to Dismiss/Strike, at pgs. 20-23. For purposes of Counterclaim Five, Heller does not dispute Prestige's argument that New Jersey and Pennsylvania do not have a conflict as to the substance of a defamation claim, as being substantially similar under both states' laws. Id., at pg. 21.

18. Heller submits, both under New Jersey and Pennsylvania law, he has satisfied the elements of defamation as follows: (i) Plaintiffs made false statements about Heller, including accusations of misconduct and mismanagement, (ii) said statements were widely disseminated and read by customers, vendors and the public, (iii) Plaintiffs knew these statements were false or acted with reckless disregard for the truth, and (iv) such reckless disregard resulted in damages, in the form of reputational harm, loss of business relationships, and significant economic damages. See Answer and Counterclaims, at ¶¶ 186-190.

19. Thus, Heller has sufficiently pled plausible facts establishing his claim for defamation.

VI. **Heller's Intentional and Negligent Misrepresentation Claims Must not be Dismissed**

20. Prestige argues Counterclaim Six and Seven, Misrepresentation (Fraudulent/ Intentional) and Negligent Misrepresentation, in Heller's Answer and Counterclaims must be dismissed because he failed to plead the elements of same. See Motion to Dismiss/Strike, at pgs. 23-25.

21. Pursuant to Rule 9(b) of the Fed. R. of Civ. P., Heller sufficiently plead the circumstances supporting these claims, as Heller explicitly stated that the statements were made in emails, texts, and media outlets communicated to investors, customers, and vendors, which satisfied the "who, what, when, where and how of the events at issue." Loduca v. WellPet LLC, 549 F. Supp. 3d 391, 401 (quoting United States ex rel. Bookwalter v. UPM 946 F.3d 162, 176 (3d Cir. 2019)).

22. Under Pennsylvania law, Plaintiffs' conduct satisfies the elements of both fraudulent and negligent misrepresentation. Plaintiffs made false statements with knowledge or negligence, intending to influence third parties, who relied on those statements to the detriment of

7

Heller and Paramount and its affiliates. See Answer and Counterclaims, at ¶¶ 191-202. These misrepresentations caused substantial financial harm and disrupted business relationships. Id.

23. Thus, Heller has sufficiently pled plausible facts establishing his claim for misrepresentation (fraudulent/ intentional) and negligent misrepresentation.

**VII.    Heller's Denials under Fed. R. Civ. P. 8(b)(5) are Expressly Authorized and Sufficient**

24. Plaintiffs challenge Heller's use of the phrase "neither admits nor denies and leaves Plaintiffs to their proofs," arguing that it is improper. See Motion to Dismiss/ Strike, at pgs. 26-27. This language is substantively consistent with Fed. R. Civ. P. 8(b)(5), which provides "[a] party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial." Fed. R. Civ. P. 8(b)(5).

25. In Callaremi Lincoln-Mercury, Inc. v. Picon Auto Group, LLC, the District of New Jersey upheld denials using nearly identical phrasing and rejected a motion to strike them. Callaremi Lincoln-Mercury, Inc. v. Picon Auto Grp. LLC, 2018 WL 5342721 *1 (D.N.J. Oct. 29, 2018). "Finally, if the party lacks knowledge or information 'sufficient to form a belief about the truth of an allegation,' it must so state, and such a statement is equivalent to a denial; any allegation not denied is admitted." Id., 2018 WL 5342721 at *2.

26. Where Heller stated in his Answer and Counterclaims that he neither admits nor denies and leaves Plaintiffs to their proofs, any reasonable person would infer that is because Heller did not have the knowledge or information sufficient to form a belief about the truth of that allegation. Thus, paragraphs 11–37, 39, 42–48, 49–54, 67–69, 82, 84–85, 89–93, 96–98, 107–110, 116–119, 126–129, 136, 140–141 in the Answer and Affirmative Defenses, are deemed denied, not admitted. Id.

4937-2380-5022, v. 1

27.     Plaintiffs' Complaint includes numerous vague, compound, or conclusory allegations, particularly those involving intent, fraud, and knowledge that are not susceptible to simple admission or denial. Heller's responses preserve his right to contest such allegations while maintaining compliance with the pleading rules. The Federal Rules do not require rigid phrasing, and courts evaluate the substance of an answer over its form. Id., 2018 WL 5342721 at *2-3.

28.     The Supreme Court in Ashcroft v. Iqbal confirmed that courts are not required to accept legal conclusions as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Heller appropriately responded to such paragraphs with qualified denials or by explicitly denying the factual allegations embedded within them. Heller's responses are consistent with the law and sufficient under Fed. R. Civ. P. 8(b).

29.     To prevail on a motion under Fed. R. Civ. P. 12(f), Plaintiffs must show that the challenged matter is not only insufficient, but also prejudicial. Courts in this District routinely hold that motions to strike are "disfavored and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." FTC v. Hope Now Modifications, LLC, No. 09-1204, 2011 WL 883202, at *2 (D.N.J. Mar. 10, 2011); see also Tonka Corp. v. Rose Art Indus., Inc., 836 F. Supp. 200, 217-8 (D.N.J. 1993).

30.     Although Plaintiffs do not use the word "prejudice," they imply it by claiming that Heller's responses prevent them from understanding which allegations are admitted or denied. That argument does not establish actual prejudice. See Motion to Dismiss/ Strike, at pgs. 26-27. Heller is not required to plead to the Plaintiff's preferred language. Fed. R. Civ. P. 8(b)(5) permit a party to respond by stating that it lacks knowledge or information sufficient to form a belief, and such a statement is treated as a denial. Heller's use of the phrase "neither admits nor denies and leaves Plaintiffs to their proofs" can be construed as legally equivalent in effect. See Callaremi,

9

2018 WL 5342721 at *2. Striking nearly one hundred (100) paragraphs in the Answer and Counterclaims based on stylistic concerns would be an abuse of Fed. R. Civ. P. 12(f) and for no legitimate purpose.

31. Plaintiffs have not shown that Heller's qualified denials are improper, nor have they demonstrated any resulting harm. The Motion to Dismiss/ Strike must be denied on these grounds.

### VIII. Heller Denies the Factual Allegations Raised in the Motion to Dismiss/ Strike

32. Heller denies Prestige's allegations that he made countless fraudulent representations to Prestige and its investors regarding ATMs purchased, the operations of those ATMs, the viability of Funds' investments, and the profits he earned. See Motion to Strike/ Answer, at pg. 2.

33. Heller denies he transferred money from Paramount to Heller Capital Group, LLC ("HCG"), on or about November 2022, rather HCG was paid aged invoices which were monthly/quarterly cadence payments. Id. In fact, there was approximately $750,000 overdue to HCG, however, HCG only received payment of approximately $300,000. HCG had a loss (write off) of approximately $450,000 as non-recoverable given all the revenue is now controlled by fund managers of the Plaintiffs. Id.

34. Contrary to Prestige's claims that Paramount lacked legal representation at the December 6, 2024, hearing in the Paramount Action due to recklessness or disregard, Paramount released its attorney after signing the Consent Judgment, which effectively resolved the litigation. Id. No party anticipated the fund managers would later pursue contempt charges, especially after Paramount's counsel formally withdrew. Id. Heller and his individual state court legal counsel reasonably expected the hearing to be adjourned given Judge Leonard G. Brown III entered an order on December 5, 2024, granting Paramount until December 30, 2025, to retain new counsel.

Id. The contempt finding was similarly based on mischaracterizations. Id. Paramount had uploaded thousands of documents in compliance with the Consent Judgment, but without counsel present, the fund managers misrepresented the completeness of the portal and shifted the scope of required disclosures mid-hearing—requests that were impossible to fulfill. Id. Heller is actively appealing the contempt ruling in state court, asserting that the new demands were unreasonable and not part of the original agreement. Id.

35. Regarding the article *Daryl Heller fires back against fraud lawsuit; claims investment managers trigger ATM network collapse*, similarly Plaintiffs' counsel speaks with LancasterOnline weekly for many hours, in which Heller likewise spoke with the press and retorts said article was published to provide false information to the media for consumption by the public, or that his Counterclaims served the same purpose. Id., at pg. 3.

36. Heller submits he is a majority owner of Prestige Group, which is a manager of every fund, including Plaintiffs. Id.

37. Heller submits discovery in this matter will reveal the intentional and negligent misrepresentations by the Plaintiffs. Id., at pg. 4. Discovery, including subpoena responses and depositions will further corroborate Heller's Answer and Counterclaims. Id. Moreover, Heller disputes Plaintiffs misrepresentation that he contradicted himself regarding (i) the $75,000,000 that Plaintiffs misappropriated of investment returns, and (ii) Plaintiffs misappropriations of funds related to the kiosks since approximately November 21, 2024. Id.

38. Jerry D. Hostetter's ("Hostetter") allegation at paragraph 8 of his certification is false. Heller is connected to the Plaintiffs through his ownership interest in Prestige Group, in which Heller owns sixty percent (60%) and Hostetter owns forty percent (40%); in turn Prestige Group has equity-ownership in the Plaintiffs.

11

## CONCLUSION

For the foregoing reasons, Heller respectfully requests that the Court deny Plaintiffs' Motion to Dismiss/Strike in its entirety.

Dated: August 12, 2025

                                         **McMANIMON, SCOTLAND & BAUMANN, LLC**
                                       *Counsel to Daryl F. Heller, Chapter 11 Debtor*

                          By: */s/ Sari B. Placona*
                                   Sari B. Placona

4937-2380-5022, v. 1